## BLIGHT *v.* SCHENCK.

Where a grantor executes and acknowledges a deed before a magistrate, which had been left there for that purpose by the agent of the grantor and grantee, and leaves the instrument with the magistrate without instructions, the delivery is absolute. And instructions given to the agent on the next day, not to deliver the deed until payment of the purchase-money, are immaterial, and do not amount to a delivery in escrow; for matters subsequent to an unqualified delivery to a stranger, cannot make a delivery in escrow.

And where a *bonâ fide* purchaser from the grantee, who obtained such a deed without performing the condition, has intervened, the *onus* of showing that there was no absolute delivery, is on the grantor.

A deed delivered to an agent as an escrow, and by him delivered to the grantee, contrary to the condition, passes a title voidable only.

An assignee for creditors may convey by attorney, though there be no special authority given in the assignment to delegate his power.

CERTIFICATE from the Nisi Prius.

*April* 19, 20.—James and Thomas Darrach, were tenants in common of certain land in Manayunk. In 1834, Thomas Darrach assigned his estate to Blight and V. L. Bradford, in trust for his creditors. The present action was an ejectment by the assignee. The defendant showed a deed from V. L. Bradford (by his attorney Thomas Bradford) and Blight, assignees of Thomas Darrach, conveying the property to James Darrach. This deed was duly acknowledged the day after its date in 1836, and recorded. One of the subscribing witnesses was the alderman who took the acknowledgment. When this deed was read, the calling of the subscribing witnesses was waived, the right being reserved to show by other testimony, that it was delivered as an escrow, and never absolutely delivered. The authority from V. L. Bradford to

Thomas Bradford, as his attorney, was also shown. It seems that there was no special provision on this subject in the assignment. The defendant further proved a conveyance by James Darrach, to defendant in 1837, and that the consideration-money was actually paid. It further appeared that, at the time of this conveyance, James Darrach was in the possession of the premises.

To avoid this title, the plaintiff undertook to show that the conveyance to James Darrach was never delivered. For this purpose he called T. Bradford, who proved that he acted as attorney for V. L. Bradford, who then resided in Michigan. The property was sold at auction, to James Darrach. One Curtis was mentioned by Blight and Darrach as a proper scrivener, and he was employed. The deeds were all handed to him, and he was to receive the purchase-money, and pay off certain encumbrances. Having received notice that this particular deed was at the alderman's office, with a request to execute it, the witness called at the alderman's late in the day, and found the deed executed by Blight. He then executed and acknowledged it, and left it with the alderman. The next morning he called on Curtis, *with whom he had had no previous conference*, and directed him not to deliver any deeds where money was payable, until the receipt of the money.

The deed was recorded within a month, but the witness had no knowledge of the fact until February, 1837, which was after the conveyance to defendant.

The defendant further gave evidence of a covenant by the assignees of Thomas Darrach, not to issue execution on a judgment obtained against James Darrach, upon the estate he had in the premises (being those now in question), at the time of the recovery of their judgment. This was, however, immaterial, since the judgment was prior to the conveyance by the assignees, and he had an undivided interest in the land to which the averment of title was referable.

The plaintiff further proved by Thomas Bradford, that he had not received the purchase-money from James Darrach, and he believed that neither V. L. Bradford, Blight, nor Curtis had received it.

GIBSON, C. J., instructed the jury, that the assignees might convey by attorney, though there was no express power to that effect in the assignment; but, if the deed was delivered as an escrow, to be delivered over on payment of the purchase-money—and that had not been paid—the delivery by Curtis was a nullity, and the deed void, as well as to defendant as to Darrach, the party

who obtained it by fraud ; and that the evidence of Bradford fully proved it was delivered as an escrow.

*Cuyler*, for plaintiff in error.—There was no evidence that anything was said to the alderman at the acknowledgment; nor was there any qualification of the effect of that act. The deed was perfected in form, and left with him without more. It is the subsequent declarations of Bradford, which must make the delivery in escrow. Now, it is settled, that any intention different from that apparent on the face of the deed, must be declared, at the execution, to be effectual: 1 J. C. R. 240. And, to prove these matters, the subscribing witnesses must be called: 8 W. & S. 172; Saxt. 458; 4 Hals. 153; 6 Conn. 111; Cro. Eliz. 7. The question is, then, was there a delivery before the instructions to Curtis. It seems that the leaving the deed, perfected in form, with the officer, was a delivery. In Cro. Eliz. 7, there was nothing but a leaving of the deed by the grantor, and it was held a delivery. So in 1 John. Ca. 116, it is said that a design to retain it, to secure the purchase-money, does not prevent the operation of the acknowledged delivery, to pass the legal title.

This is the very case before the court, and it is essential to the security of purchasers. But the delivery was still further completed. It is plain a delivery was acknowledged before the alderman, for he signs it as a witness to the delivery. There was, therefore, a verbal acknowledgment of delivery, which is sufficient, without any act done : Touch. 57. If Mr. Bradford had retained the deed under these circumstances, without evidence of an intent that it should not operate immediately, there would have been an effectual delivery : Smith on Cont. 9; 5 B. & C. 671; 8 C. & P. 124. How much more is this so, where he absolutely parts with the possession without a declaration of intent.

Under the circumstances of a possession by the grantee, under an apparently perfect title, and the intervention of a purchaser without notice, the onus of proving the defect in the title is on the plaintiff, and that must be strict. This he failed in. There was nothing in evidence disproving a delivery by Blight, or the receipt of the purchase-money by him or by Curtis. If received by Curtis, then the title was perfect, for he must have been Bradford's agent, otherwise the delivery to him, as Darrach's agent, was absolute : Touch. 58; 16 Verm. 530.

We are purchasers for value, on the faith of the written declarations of the grantor. He cannot, therefore, be permitted to gainsay

them: 6 S. & R. 401; 6 W. 339; 1 Stor. Eq. § 388 et seq. 439; 1 Fonb. Eq. b. 1, c. 3, § 4, n.  It is not for him to lead us into error, and then take advantage of it: Story, § 384–5; our equities are equal, and we are entitled to the protection of the legal title.

*V. L. Bradford* and *Scott,* contrà.—There was evidence, and so the jury found, that there was a previous arrangement, by which this deed was to be delivered as an escrow, and we are within the very point of Souverbey *v.* Arden, for there was evidence of no intention to deliver when the deed was left with the alderman.  To the same effect are the other cases cited, particularly Jackson *v.* Dunlop, which decided that the deed was never perfected.  Here the delivery did not take place until the deed was handed to Curtis, as an escrow.  The acknowledgment is but slight *primâ facie* evidence of delivery, for it is the universal custom to acknowledge deeds before delivering them.  The fact that it was not taken away is explained by the circumstances.  It was left there by Curtis, and afterwards received, under the instructions to hold it in escrow.

It is said the burden of proof is on the plaintiff; but he had shown a legal title.  The defendant exhibited a deed, and the uncontradicted evidence was, that it was delivered in escrow.  It was then for the defendant to show a compliance with the condition. There was no evidence of this, but the presumption arising from the possession of the deed.  But the delivery in escrow to a third person does not authorize him to deliver absolutely until the condition is performed: 1 J. C. R. 248; 2 W. 362; 8 John. 404; 6 Wend. 666; 6 Mass. 60.  Here Curtis was the special agent of the grantor.  No presumption arises of his having a general authority; on the contrary, the grantee must prove that the agent had authority to act: 7 Pick. 91.  16 Verm. 530, differs in many respects—there the agent was acting for the grantee—the condition was, payment of money for the trouble of executing—and the case rather turns on the doctrine forbidding conveyances by parties out of possession. Darrach was, of course, bound to notice this condition, and as by it the deed was void, or rather never existed, it is not the case of collateral fraud, from which a *bonâ fide* purchaser is discharged: 1 W. C. C. R. 79; 4 Wh. 382; 2 Barr, 195.  Neither possession nor the acknowledgment and recording of the deed dispenses with the necessity of proof of delivery: Touch. 57; 4 Wh. 387; 7 Greenl. 187; 2 Barr, 193; 1 Pa. 32; 4 Litt. S. C. 466; 6 Pet. 124; 15 Wend. 545; 13 Pick. 69; 10 Mass. 456; 2 W. 359. And the fact, that Darrach was in possession under another title,

discharges the plaintiff from the charge of negligence which the defendant might take advantage of. Nothing was done by the plaintiff to entitle defendant to the protection of the rule contended for.

Nor is there any need of the interference of equity. The contract was in *fieri*, until perfected by delivery: 3 Pa. 447; and, until then, there is no room for the interference of equity: 1 S. & R. 42. The defendant, moreover, had it in his power to prove a compliance with the conditions, by either Curtis or Darrach, and it could not be expected that the plaintiff should examine them to prove their own fraud.

*May* 3. Rogers, J.—In Souverbey *v.* Arden, 1 J. C. R. 240, it is ruled, that the declarations of the intention or understanding of a grantor, different from the intent apparent on the face of the deed or of conditions annexed to it, to be effectual, must be made at the time of executing it. That if, at the time of executing a deed, there was no delivery or intention to deliver—these are facts which should be explicitly proved by the grantor. If, therefore, the acts and declarations of Mr. Bradford, at the time of the execution and acknowledgment of the deed, amounted to a delivery, his subsequent conduct the next day cannot affect or divest the title. The question must be examined in reference to that point of time, throwing entirely out of view what the witness proved afterwards took place.

The 5th section of the act of 1715 enacts, that all recorded deeds, &c., shall have the same force and effect for giving possession and seisin, and making good the title and assurance of lands, tenements, and hereditaments, as deeds of feoffment with livery of seisin, or deeds enrolled in any of the king's courts of record at Westminster have, in the kingdom of Great Britain.

Now, although recording the deed is not an absolute delivery, but only evidence of it, as is ruled in Chess *v.* Chess, 1 Penna. 34, yet, as the fact of delivery is the assurance of the title in the hands of an innocent purchaser, it is entitled to great weight and consideration. A purchaser for value has a right to act on the faith that it has been signed, sealed, delivered, and acknowledged, as it purports to be, in proper form and by proper parties. He cannot suppose it was surreptitiously taken from the grantor, and put on record by circumvention and fraud; and hence, as is decided in Souverbey *v.* Arden, already cited, before he can be deprived of his property, the facts which avoid his title must be

proved by the grantor by the most unexceptionable testimony. Has the plaintiff made out such a case as avoids the deed, depends mainly on the testimony of Mr. Bradford, who proves that he went to the office of the alderman, found the deed there already executed by the co-assignee; that he signed and acknowledged it himself, without any qualification, and went away, leaving the deed where he had found it. It is true, he went the next day to the office of Curtis, the agent of both parties, and told him not to deliver any of the deeds, where the purchasers were to pay money, until he received the money. If the act of Mr. Bradford, at the office of the alderman, was in law a delivery, his subsequent acts can have no effect in divesting a title already vested in the grantee: 1 J. C. R. 240. That the delivery was complete when the grantors declared, before the proper officer, that they signed, sealed, and delivered the deed, without saying or doing anything to qualify the delivery, is well settled on authority. If the grantee had been present at the time, either personally or by agent, no person would doubt that the title vested; but it is ruled, that this will not prevent it taking effect as a good deed. Thus, in Garnons v. Knight, 5 B. & C. 671, and Lloyd v. Bennett, 8 C. & Pay. 124, the principle deduced by Mr. Justice Bayley, in a most elaborate review of all the authorities, is, that when an instrument is formally sealed and delivered, and there is nothing to qualify the delivery but the keeping of the deed in the hands of the executing party—nothing to show that he did not intend it to operate immediately—that is a valid and effectual deed, and that delivery to the party who is to take by it, or any other person for his use, is not essential.

But this case, be it remarked, is stronger than the case cited; for there was not only a complete and unconditional acknowledgment of the signing and delivery, but the grantor did not even retain the deed, but left it with the magistrate. Shepherd, in his Touchstone, p. 57, lays it down that delivery to a stranger will be a sufficient delivery if he has authority to receive it, or if made for the use and on behalf of the grantee. Delivery to a third person for the use of the party in whose favour the deed is executed, where the grantor parts with all control over the deed, makes the deed effectual from the *instant* of such delivery, although the person to whom the deed is so delivered be not *the agent* of him to whose benefit the deed is made. Can there be any question, says Bayley, J., in Garnons v. Knight, that delivery to a third person for the use of the party in whose favour the deed is made, when the grantor parts with the whole control

over the deed, makes the deed effectual, from the *instant* of such delivery? The law will presume, if nothing appears to the contrary, that a man will accept what is for his benefit. The cases cited show conclusively that the presence of the grantee is not essential; nor does it alter the case, that the magistrate was not the agent of the grantee. The delivery is good, notwithstanding if he parts with all control over the deed; if he parts with it without any qualification, the title vests from the instant it is so delivered. It is not pretended that at the time the deed was signed, sealed, delivered, and acknowledged, there was any condition, qualification, or explanation whatever.

- The condition or qualification, if any, was made to Mr. Curtis on the following day; but that was too late, as it was not until the title was vested in the grantee. To the same effect is Lloyd v. Bennet, 8 C. & P. 124. There a person made a deed of gift of all his real estate to his daughter; he signed and sealed it, and no one being present but the attesting witnesses he said: "I deliver this as my act and deed." After this he desired a third person to keep it, and not deliver it to his granddaughter till he was dead, it being suggested to him that she might otherwise take his property from him in his lifetime; it was held that the delivery of the deed was complete. It is contended with great force that the deed being perfect in form and complete, it being duly recorded and the grantee in possession, a third party having innocently invested his money on the faith of such circumstances, it rested·on the plaintiffs to show strictly that the condition, if any, was not complied with. The plaintiff in error insists that the grantee ought to show that Blight did not deliver the deed, that he had not received the purchase-money, or that Curtis had not received it. We deem these facts important, and are of opinion that the burthen of proving this was thrown on the grantor. There was no evidence that the deed had not been delivered by Blight, one of the grantors; that he had not received the purchase-money, except what amounts to little, if anything, that he does not charge himself with it in a subsequent and separate account; nor was there any evidence that Curtis had not received the purchase-money, except the testimony of Mr. Bradford, that he never accounted for it to him, nor, so far as he knew, to any other person. As the burthen of proof is on the grantor, he must establish these facts, even if it be necessary to examine Mr. Darrach for that purpose. If the attesting witness had been present at the time of the execution of the deed before the alderman, they must have been called by the grantor: Markley

*v.* Swartzlander, 8 W. & S. 172; but as they were not present, a *condition* attached to the delivery at that time, may, I agree, be proved by others, as the alderman, for example.

But it is unquestionable law, that a deed cannot be made an escrow by any other declarations than are made at the time of signing and executing the instrument. This is so held, in effect, in Souverbey *v.* Arden, 1 J. C. R. 240, where it is ruled, as has been already said, that the declarations of the intention or understanding of a grantor, different from the intent apparent on the face of the deed, or of a condition annexed to it, to be effectual, must be made at the time of executing it. It is the duty of the grantor, as the Chancellor truly says, to speak then, and declare his intentions, if any he has, inconsistent with the natural and necessary result of the solemnity.

The general principle of law is, that the formal act of signing, sealing, and delivery, is the perfection and consummation of the deed; and it lies with the grantor to prove clearly, that the appearances were not consistent with the truth.

The presumption is against him, and the task is on him to destroy that presumption by clear and positive proof that there was no delivery, and that it was so understood at the time.

But, granting the deed was deposited with Curtis, as an escrow, to be delivered only on the performance of a special condition, and, in violation of his instructions, he delivered the deed without exacting payment, does that avoid the title of the defendant, who is a *bonâ fide* purchaser, without notice? This is the next question. The first reflection which strikes us is, that, if a title may be avoided under such circumstances, no purchaser is safe. This is a strong case, for here the defendant is an innocent purchaser for value. He invests his money on the faith of the solemn acts and declarations of the plaintiff. These acts and declarations were made before a magistrate, duly empowered for that purpose, certified to by him in proper form, duly recorded on the records of the county, which, by the act of 1715, is to have the same force and effect for giving possession and seisin, and making good the title and assurance of the law, as a deed of feoffment, with livery of seisin, &c. Moreover, it appears that, at the time of the purchase, the vendee was in the actual possession of the premises. There was, therefore, nothing to put him on his guard. It must require a very strong case, as the plaintiff in error justly contends, to permit a grantor to aver against the confidence thus reposed in his acts and declarations, exactly the opposite of those acts and

declarations; to say, after acknowledging before the proper officer of the law, that he delivered the deed, that he never delivered it, and having acknowledged that he received the purchase-money, that he never received it. The case of Pratt *v.* Holman, 16 Verm. 530, is in point. That case rules that, where the grantor in a deed of land delivered the deed to the agent of the grantee, with directions not to deliver the deed without payment by the grantee of a sum of money, and the agent delivered the deed to a third party, for the grantee, such third person promising to pay the grantor the sum claimed, that the deed became operative, and there was a sufficient delivery, notwithstanding the agent did not comply with his instructions. Chief Justice Williams considered it a very plain case. It is not necessary for us to go as far as this case extends, for the delivery was held complete as between the grantor and grantee, the court saying, the remedy is against the grantee to recover the sum unpaid, in a proper action. But, if the title is good, as between the immediate parties to it, and that it is so, unless the transaction is tainted with fraud, I have no doubt, how much more so in the case of an innocent purchaser! The defendant is in possession, and has, moreover, a legal title; the plaintiff cannot succeed, except by showing not merely an equal, but a superior equity. But his only equity is, that he has not received his purchase-money; and, as the plaintiff justly contends, his equity is equal, for he has paid his purchase-money. But, where the equities are equal, as has been often decided, the legal title must prevail. It is a wholesome maxim of the law, that, where one of two innocent persons must suffer a loss, and *à fortiori* in cases where one has misled the other, he who is the cause or occasion of that confidence by which the loss has been caused or occasioned, ought to bear it. A party who enables another to commit a fraud is answerable for the consequences; so, if a party says nothing, but, by his expressive silence, misleads another party to his injury, he is compellable to make good the loss, and his own title is made subservient to the confiding purchaser. This is text law: Stor. Eq. § 388, 439; 1 Fonb. Eq. b. 1, c. 8, § 4, n.

Here Curtis, who, it is alleged, delivered the deed contrary to his instructions, was the agent of the grantor.

If a man employs an incompetent or unfaithful agent, he is the cause of the loss so far as an innocent purchaser is concerned, and he ought to bear it, except as against the party who may be equally negligent in omitting to inform himself of the extent of the

2 B 2

authority, or may commit a wrong by acting knowingly contrary to them.

But this principle must not be extended to a person who has no possible means of protecting himself, who acts on the presumption that the records of the county are not intended to mislead, but speak the truth, that the acts and declarations of the grantor are such as they purport to be. If the grantor is injured by the conduct of his agents, the remedy is against them; surely there is no reason that it should affect an innocent purchaser, who pays his money on the faith that his title is good. Nor is it any answer that he may protect himself by proper covenants. This, in many cases, may be impracticable, and would amount to this, to discourage all sales or transfers of property whatever. This case was ruled on the idea that the title of the original purchaser was void. The court instructs the jury that the hinge on which the case turns is, whether Darrach got the deed from Curtis without paying the purchase-money. "If you find he did, it is my business to tell you the deed is worth no more in his hands than a blank sheet of paper, and the defendant cannot make title to it, whether he knew of the original defect or not. Without delivery by the grantors, or some one authorized by them, the deed is imperfect, or rather no deed at all, and it cannot be delivered on the authority of the grantors, except on the condition prescribed by them." Again, the court say that "if he (Curtis) delivered the deed without having received the purchase-money, it was an incomplete deed, or rather no deed at all, and it would remain so, even in the hands of an innocent purchaser, to this day; and I say to you, by way of direction, as matter of law, of which it is the business of the court to judge, that it would confer no title on defendant or to anybody else." But this is an erroneous view of the law, for, as is ruled in Pratt v. Holman, 16 Verm. 530, the deed is operative, there being a sufficient delivery, notwithstanding the agent did not comply with his instructions. It is not the case of condition, but the ordinary case of a breach of instructions, which at most makes the deed voidable, but not void.

The agent has the power to deliver the deed, and when he does not comply with his instructions, he becomes answerable to his principal. If this principle be sound, the deed would be void by the omission to receive one cent of the purchase-money, a proposition which would shock the common sense of every man.

It would be incapable of confirmation, as, in the language of the Chief Justice, it would be no deed at all—a mere sheet of blank

paper, conferring no title on the original purchaser, or on an innocent purchaser from him. On this branch of the case, the defendant in error relies on Van Amringe v. Morton, 4 Wh. 382, and Arrison v. Harmstead, 2 Barr, 195, the former of which he contends to be, on all fours, in principle with the ruling of the Chief Justice in the present case. With all due respect, I must say, I see but little resemblance between the cases. That case was ruled on the principle that the deed was void, there being no delivery at all, either by the grantor himself or by any person having the semblance of authority. The point decided in that case is that if a deed which has been executed and acknowledged by the grantor, with a blank for the grantee's name, be surreptitiously and fraudulently taken from the grantor's house, and the blank filled up, no title passes, and a *bonâ fide* purchaser, for a valuable consideration, from the person holding the deed, stands in no better situation than such fraudulent holder, especially if the original grantor remains in possession of the property. In the first place, be it remarked, the deed was incomplete, being executed by the grantor with a blank, negativing all idea of a formal delivery. The deed was fraudulently taken from his possession, by a person not having the slightest authority to do so; the blank filled up by him, and delivered to the grantee. It is true the deed was kept by the grantor locked in his drawer, and that he trusted the key to his brother, who was induced by the grantee to fill up the deed and deliver it to him, without the grantor's knowledge or consent, and contrary to his instructions at the time he trusted the key to him. There was, therefore, no power in him, general or limited, and there was no such negligence or default in the grantor as could postpone his rights; for the mere custody or superintendence of property, as in the case of a servant or friend, gives no authority to dispose of it, either express or implied.

The deed was simply void. Besides, the case shows that the original grantor remained in the possession, which, of itself, served to put the purchaser on inquiry. In Van Amringe v. Morton, the deed as between the grantor and grantee, was a mere nullity—a blank sheet of paper—no deed at all. As, then, the grantee, who was himself a party in the fraud, had not even a semblance of title, he could pass none to another, although that person was an innocent purchaser for value. In Van Amringe v. Morton, the distinction is taken between a void and voidable deed, in reference to its effect on an innocent purchaser. On that distinction it was that the case of Price v. Junkin was ruled, 4 W. 85. It is also applicable

to all cases of fraudulent sales; for, although the title is a voidable one as between the original parties, yet, as respects a subsequent and innocent purchaser, the title is good.

We perceive no error in charging that, as an act of confirmation, the covenant not to issue execution has no effect. The covenant extends only to the real estate situate in the county of Philadelphia, of which the said James Darrach was seised or possessed at the time the judgment was obtained. The property in question did not pass to James Darrach until after the rendition of the judgment. It was after acquired property, according to the defendant's own showing. Besides, Mr. Bradford testifies, that, at the time he executed that instrument, he was ignorant of the fact that Darrach had obtained possession of the deed, &c., without payment of the purchase-money.

Judgment reversed, and a <em>venire de novo</em> awarded.