# Stephens *versus* Huss.

1. Huss *v.* Stephens, 1 P. F. Smith 282, affirmed.
2. The grantor in several deeds, gave them to a third person with directions to hand them after the grantor's death to the persons to whom they were made, or have the deeds of such as might be minors recorded ; they were so handed over and recorded respectively. *Held,* that the delivery was perfect.

January 9th 1867.    Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Error to the Court of Common Pleas of *Greene county*.

In the court below the case was an action of ejectment at the suit of Barzilla Stephens and Margaret his wife, in her right, against Eleanor A. Huss and others, for the undivided fifth part of two

tracts of land containing together 184 acres. The writ was issued December 30th 1861.

The same case was before the Supreme Court under the name of Huss v. Stephens, reported in 1 P. F. Smith p. 282, when the judgment of the court below was reversed.

It was afterwards tried before Gilmore, P. J., when the facts were substantially the same, and the same questions considered and ruled. There were additional questions also raised on the latter trial.

The plaintiff's primâ facie case was made out by the admission on the trial that the land in dispute belonged to A. Lantz, Sr., who died March 3d 1859, leaving five children, of whom Mrs. Stephens, the plaintiff, was one. The defendants then gave in evidence the deed from Andrew Lantz, Sr., to "the heirs of Andrew Lantz, Jr.," referred to in the former case.

In rebuttal, the plaintiffs called Joseph L. McConnell, who testified that he drew this deed, and others, for the grantor; and also: "These deeds were deposited with Jesse Lazear by the grantor. I don't know how long he had them, but a very short time before he left them with Lazear he wanted me to take charge of them. It was inconvenient for me to keep them, and I recommended him to Lazear. The deeds were in a tin box, locked up with a padlock. I don't know who kept the key; they were locked up at the squire's after the acknowledgment; the box belonged to Lantz. Lantz came to my house in the spring or summer of 1854, and told me he wanted me to keep the box; I went with him to Lazear; he got the box. * * * I brought it home, and have had the box ever since—never out of my possession until after he died. He gave me directions what to do with the deeds in the box. My directions were, that after his death I was to hand the deeds over to the persons to whom they were made. There were written directions in the box, directing the deeds to be handed over; this was done in case anything might happen to me before his death. These instructions were given before the box was given to Lazear, and he had the paper outside the box tied to the handle. When I got the box I put it in the inside. No person mentioned in the writing to hand over the deeds. If Andrew's children were not of age when he died, or any of them, I was to see that the deeds should be recorded so that no advantage should be taken of the younger children. I don't know that these special instructions were in the writing, or slip of paper which had been tied to the handle, and afterwards put into the box. A few days after the old man's death, I went with A. Lantz, Jr., into the recorder's office, had the deeds with me, and handed them over to the proper officer to be recorded; and the other deeds I gave over to the grantees, who were capa-

ble, or to their agent, in the presence of the grantees. I saw the deeds (to Lantz's children) afterwards in the possession of Mr. Huss, son-in-law of A. Lantz, Jr.

The plaintiffs then offered to prove a conversation between Andrew Lantz, Jr., and Henry Lantz, one of the children of A. Lantz, Sr., occurring shortly after the death of A. Lantz, Sr., in which it was said by A. Lantz, Jr., that they had managed the old man, so as to get a principal part of his estate, and that he and Henry had bribed Jos. McConnell to fix it up for them, and they had given him $500 to do it, and he had done it. The evidence was rejected and an exception taken.

There was evidence that the deeds were made by arrangement —before marriage—with the grantor's intended wife.

The following are the points of the plaintiffs, with the answers of the court:—

1. If the instrument under which defendants claim was not delivered, it is inoperative as a deed; and it is for the jury to determine on the evidence before them, whether it was delivered or not.

Answer: "This is true. Without a delivery there is no complete execution of the deed, and one of the essential elements of a deed is wanting. Further, it is true that you are to find the evidence of delivery; but it is for the court to say what is necessary to prove to constitute a delivery."

2. If Andrew Lantz, Sr., deposited this deed with J. L. McConnell, with directions to deliver it to the grantees after his death; and if, at the time of so doing, he retained the right of recalling it at pleasure, there was no delivery of the deed, and it is therefore inoperative. And that this may be so, it is not necessary that the right to recall the deed should have been expressly reserved at the time it was left with McConnell; it is sufficient if such was the understanding of the grantor and McConnell, and that such was their understanding may be inferred from their conduct.

Answer: "If the jury find that Andrew Lantz, Sr., the grantor, retained to himself the power to revoke the authority given to Jos. L. McConnell, the power to deliver these deeds after his death, the retention of this right and dominion over these conveyances will not render the deeds inoperative if McConnell did deliver the deeds as instructed after his death, and the deeds would then become effectual, and the estate pass to the grantees; but whether the estate would vest from the time they were committed to McConnell is not necessary to decide."

3. If the grantor deposited this deed, together with other deeds to his children or grandchildren, with Mr. Lazear, and afterwards withdrew them from his (Lazear's) custody and

[Stephens v. Huss.]

placed them in the hands of Mr. McConnell, as stated in the foregoing point; and if the grantor subsequently called on Mr. McConnell, and lifted and destroyed certain deeds, with his (McConnell's) acquiescence, which had been left with him at the same time, under the same circumstances, and with the same directions as the deed in question: these are facts from which the jury may find that the grantor retained the right to recall the deed; and, if they find that fact, their verdict ought to be for the plaintiffs.

Answer: "This would be evidence from which the jury could find that the grantor retained the power to recall the authority of McConnell to deliver the deed; but we have already said that the retention of this power would not invalidate the delivery of the deeds if that power was executed."

4. That if the jury believe that Andrew Lantz, Sr., did not part with all control over the deed during his life, and that he died without having authorized, by writing proven by two witnesses, any person to deliver the same after his death; then there is no delivery of the deed proven, and the plaintiffs, having shown title in themselves, are entitled to recover.

Refused.

5. If the jury find that Andrew Lantz, Sr., after having deposited this deed with Joseph McConnell, to be delivered after his death, became dissatisfied and desired McConnell to return the deed to him, that he might destroy it, and McConnell refused to do so; this would be a revocation of his authority to deliver the deed, and a subsequent delivery of it would be void. If the jury find the facts to be as above stated, their verdict must be for the plaintiffs.

Answer: "We answer this point in the affirmative. If the power was recalled it was incompetent for McConnell to deliver the deeds after his death; and therefore the deeds would vest no title."

6. If this deed was not to be delivered to the grantees until after the death of the grantor, and if it was not recorded until after his death, it is inoperative as a deed, for the reason that the grantees are not sufficiently described; it being uncertain who would be the parties to take at the death of the grantor, under the designation of grandchildren; and it is inoperative for the further reason that some of the grandchildren were not in being at the date of the deed.

7. This being a deed to the "heirs" of a living man is void for uncertainty in the grantees.

Answer: "The Supreme Court has already decided these points against the plaintiffs."

[Stephens v. Huss.]

There was a verdict, September 26th 1866, for the defendants.
The errors assigned were the rejection of the evidence, and the
answers to the points.

*W. H. Lowrie*, for plaintiffs in error, cited McKinney *v.*
Rhoads, 5 Watts 343; Blight *v.* Schenck, 10 Barr 290; Gar-
nons *v.* Knight, 5 B. & C. 671; Johnson *v.* Farley, Sup. Ct. N. H.
Am. L. Reg. Sept. 1866, p. 699; Jacobs *v.* Alexander, 18 Barb.
243; Maynard *v.* Maynard, 10 Mass. 456; Hall *v.* Leonard, 1
Pick. 30; Morris *v.* Stephens, 10 Wright 200; Porter's Appeal,
9 Wright 207; Criswell's Appeal, 5 Id. 290; Guthrie's Appeal,
1 Id. 9; McKee *v.* Pfouts, 3 Dallas 486.

*A. A. Purman*, for defendants in error, cited Burton *v.*
Scott, Randolph 399; Quinlan *v.* Davis, 6 Wh. 169; Wardell *v.*
Edon, 1 Johnson 531, note; Dunn *v.* Snell, 15 Mass. 481;
Welch *v.* Mandeville, 1 Wheat. 233; McCullum *v.* Coxe, 1 Dallas
139; Packer *v.* Gonsalus, 1 S. & R. 526; Osgood *v.* Manhattan,
3 Cowen 612; McCready *v.* Freedly, 3 Rawle 251–3; Tuttle *v.*
Cooper, 5 Pick. 414; Nelson *v.* Lloyd, 9 Watts 22; Blight *v.*
Schenck, 10 Barr 292; Ward *v.* Lewis, 4 Pick. 518; 1 Harr. &
Johns. 323; Games *v.* Stiles, 14 Peters 327; 3 Metc. 109; 4
Kent's Com. 504; Shutt *v.* Large, 6 Barb. 373; Taw *v.* Bury,
2 Dyer 167, b.; Alvord and Lea's Case, 2 Leon. 110; Butler and
Bakers' Case, 3 Co. 26, b.; Doe *v.* Knight, 5 B. & C. 671; 8
D. & R. 348; Church *v.* Gilmore, 15 Wend. 656; Thompson *v.*
Leach, 2 Vent. 198; Souverby *v.* Ardin, 1 Johns. Ch. Rep. 240;
Scrugham *v.* Wood, 15 Wend. 545; Jones *v.* Jones, 6 Conn. Rep.
111; Sheppard's Touch. 57–8; Read *v.* Robinson, 6 W. & S.
329; Simonton's Estate, 4 Watts 181; McKinney *v.* Rhoads,
5 Id. 344; Miller's Appeal, 3 Rawle 312; Shelton's Case,
Cro. E. 7; Arrison *v.* Harmstead, 2 Barr 193; Foster *v.*
Mansfield, 3 Metc. 415; Wheelwright *v.* Wheelwright, 2 Mass.
447; Hatch *v.* Hatch, 9 Id. 307; Maynard *v.* Maynard, 10
Id. 456; Verplank *v.* Sterry, 12 Johns. 551; Murray *v.* Stair,
2 B. & C. 88; Johnson *v.* Baker, 4 B. & Ald. 440; 9 Rep.
137; Bushell *v.* Passmore, 6 Mod. 217; Morris *v.* Stephens,
10 Wright 200; Hayes on Estates 35; Guthrie's Appeal, 1
Wright 9; Salisbury *v.* Andrews, 19 Pick. 250; Moore *v.* Griffin,
9 Shep. 350; Smith on Ex. Interests 237–42; 2 Fearne on
Remainders, chap. 10, p. 203; Broom's L. M. 226, 238; 2 Black-
stone's Com. 379–80; Co. Litt. 223; Worrall's Appeal, 5 W. &
S. 111; Means *v.* Presb. Ch., 3 Id. 303; Ibid. 160; Sheppard's
Touch. 234–37; Cox *v.* Freedley, 9 Casey 124; Brown *v.* Brooks,
1 Id. 213; 2 Pars. on Con. 8; Smith *v.* Packhurst, 3 Atk. 135;
Sheppard's Touch. 85–8, and 236; Broom's L. M. 276; 2 Black-

stone's Com. 379–80; Bryan v. Bradley, 16 Conn. 474; Jameson v. Palmer, 7 Shep. 425; Winter v. Perratt, 10 Bing. 207–9; 7 Scott N. R. 45–6; 7 Scott N. R. 26; 7 Scott N. R. 60–1; 5 B. & C. 48; Right v. Creber, 5 B. & C. 866; Sheppard v. Nabors, 6 Ala. 131; Donald v. Dendy, 2 McMull. 123; Lockwood v. Jessup, 9 Conn. 272; Bagshaw v. Spencer, 1 Ves. Sen. 141; Archer's Case, 1 Co. 66; Lisle v. Grey, 2 Lev. 233; Goodright v. White, 2 W. Bl. 1010; James v. Richardson, 2 Jones 99; Burchett v. Durdant, Carthew 154; Brown v. Barkham, Prec. in Ch. 467; Darbison v. Beaumont, 1 P. Wms. 229; Long v. Laming, 2 Burr. 1100; Walker v. Snowe, Palm. 359; Doe v. Perratt, 5 B. & C. 48; Sprague v. Woods, 4 W. & S. 192; Lord Say and Seal's Case, 10 Mod. 40; Butler's note 231, Co. Litt. 271.

The opinion of the court was delivered, May 13th 1867, by

READ, J.—In the opinion delivered by the Chief Justice on the 23d of January 1866 (1 P. F. Smith 282), on the former hearing of this case, it was held that the present defendants were the grantees in the deed executed by their grandfather, Andrew Lantz, Sr. This question which has been reargued on the present hearing, we shall not reopen, as we consider it settled by the unanimous opinion of the court, which after full reflection we believe to be perfectly correct, and is certainly in strict conformity to the real justice of the case.

There is strong confirmation of the view taken by this court in the late case of Reeves v. Watts, 1 Law Rep. Q. B. 412, where it was held that an indenture between the defendant of the first part, and all the creditors of the said defendant of the second part, was valid, and any one of the creditors could take advantage of a covenant in it. Mr. Justice Blackburn said, "My own opinion was strongly in favor of the proposition, that a person may be made a party to a deed *inter partes*, by description as belonging to the defined class; on the principle, *id certum est quod certum reddi potest;* and this view is much strengthened by the case of Maughan v. Sharpe, and particularly by the judgment of that learned judge Sir E. V. Williams." In that case, which is reported in 34 L. J. C. P. 19, Mr. Justice Williams said, p. 24, " With respect to the deed assigning the goods from Dolby to the defendants, it is said it is inoperative, because of the necessity to name a grantee to enable the deed to have an operation. I apprehend, however, that it is settled, a grant may be good, though the grantee be not named by his Christian name or surname. In Shep. Touch. 236, after stating the consequences of a mistake in the Christian name or surname, it is stated, ' And yet if the grant do not intend to describe the grantee by his known name, but by

[Stephens *v.* Huss.]

some other matter, then it may be good by a certain description of the person without surname or name of baptism;' and it is added, *id certum est quod certum reddi potest.* I am of opinion that the meaning of the grant in this deed, is to convey the goods to the persons using the style and name of the City Investment and Advance Company. They may or may not be a corporation; but when it has been ascertained that the persons answering to that description are the defendants, the grant operates accordingly to convey the property to them."

The only question open, therefore, is whether there was such a delivery of the deeds as to vest the title in the grantees. We are to recollect that the consideration of natural love and affection is amply sufficient in this case, the dispute being only between the children and grandchildren of the decedent, and the deeds being a substitute for a will, so as to avoid the claim of the widow in case of a second marriage, which was in contemplation at the time, and actually did take place afterwards.

In O'Kelly *v.* O'Kelly, 8 Metc. 436, Chief Justice Shaw says: "That a deed was made, executed and acknowledged by the ancestor, was proved. The question was, whether it was delivered so as to take effect and pass the estate. If it was delivered by the grantor to any person in his lifetime, to be delivered to the grantee after his decease, it was a good delivery, upon the happening of the contingency, and relates back so as to divest the title of the grantor by relation from the first delivery: Foster *v.* Mansfield, 3 Metc. 412."

This is the case before us. The uncontradicted testimony of Joseph L. McConnell proves this: "He gave me directions what to do with the deeds in the box. My directions were, that after his death I was to hand the deeds over to the persons to whom they were made"—"If Andrew's children were not of age when he died, or any of them, I was to see the deeds should be recorded, so that no advantage should be taken of the younger children"—"A few days after the old man's death I went with A. Lantz, Jr., into the recorder's office, had the deeds with me, and handed them over to the proper officer to be recorded; and the other deeds I gave over to the grantees, who were capable, or to their agent in the presence of the grantees. I saw the deeds afterwards (to Lantz's children) in the possession of Mr. Huss, son-in-law of A. Lantz, Jr."

The jury found that the power to McConnell was never recalled or revoked by the decedent. The statement above, therefore, correctly represents the facts, and upon them it is clear the delivery was perfect.

The points submitted to the court do not arise out of the evidence, for there was no testimony showing the decedent retained

[Stephens *v.* Huss.]

the right to recall the deeds at pleasure, and of course the answers of the court would be immaterial, and the court might have refused to answer them. But we think the ruling of the court is sustained in any aspect by the cases of Wheelwright *v.* Wheelwright, 2 Mass. 447, decided by Chief Justice Parsons, and Hatch *v.* Hatch, 9 Mass. 307, where the doctrine is fully explained and extended so as to cover a case like the present.

There is nothing in the error assigned to the rejection of evidence ; and as it is clear that there was a good delivery of the deed upon the happening of the event, the death of the decedent,

The judgment is affirmed.