## Bean Estate

*Smillie & Bean*, for accountants.

*Robert Trucksess*, for Estella M. Smith, claimant.

*High, Swartz, Flynn & Roberts*, for Estate of Katie B. Gabel, claimant.

VAN RODEN, P. J., specially presiding, January 3, 1948.—Decedent was a prominent member of the Montgomery County bar. In the course of his professional duties, he was retained by Estella M. Smith to represent her interest in connection with the estate of Joseph H. Johnson, deceased. On April 8, 1939, while that matter was in progress, Mrs. Smith wrote a letter to decedent, stating as follows:

"At the time of settlement in the Estate of Joseph H. Johnson, deceased, I hereby authorize you to pay out of the funds collected by you, $100.00 to Lawrence High and $500.00 to Katie Gabel."

On February 16, 1940, after Mr. Bean had completed the collection of the distributive share due Mrs. Smith

from the Johnson estate, she again wrote to Mr. Bean, as follows:

"I hereby authorize you to pay out of the moneys due me in the Estate of Joseph H. Johnson, deceased, the sum of One hundred Dollars, ($100.00), to Lawrence High, and the sum of Five hundred Dollars, ($500.00), to Mrs. Katie Gabel."

Mr. Bean made payment of the sum of $100 to Lawrence High and received a written release in connection therewith. It appears, however, that Mrs. Gabel was too ill to comply with Mr. Bean's request that she call at his office and execute a similar release. On January 6, 1941, Mrs. Gabel died, without ever having received the above-mentioned $500.

After the death of Mrs. Gabel, and prior to the death of Mr. Bean, which occurred on September 20, 1943, both Mrs. Smith and the administrator of the estate of Katie S. Gabel, deceased, made demands upon Mr. Bean, each claiming to be entitled to the said $500.

The executors of the Bean estate have frankly admitted that Mr. Bean was not entitled to the $500 and was merely acting as a stakeholder pending disposition of the rival claims.

At the time of audit in this estate, both claimants appeared and presented testimony in support of their respective contentions.

The first question to be considered is the competency of Mrs. Smith and her husband to testify in this matter. The Act of May 23, 1887, P. L. 150, sec. 5 (e), 28 PS §322, provides that no surviving party to a thing or contract, whose interest shall be adverse to the right of the deceased party, shall be a competent witness to any matter occurring before the death of a deceased party. The interest of Mrs. Smith is not antagonistic to the interest of Mr. Bean or his personal representatives since they are not claiming any interest whatsoever in the fund in question. On the other hand, the interest of Mrs. Smith is antagonistic to the claim of

Mrs. Gabel and her personal representative since both parties are making adverse claims to the same fund. Accordingly, Mrs. Smith was incompetent to testify to any aspect of the transaction with Mrs. Gabel, but was fully competent to testify that, after Mrs. Gabel's death, she had made demand upon Mr. Bean for the payment of the $500 to herself, and the court will consider only that portion of Mrs. Smith's testimony which relates to such demand. Where a husband or wife is an incompetent witness under the statute, the other spouse is also incompetent to testify because of the identity of his or her interest with that of the other spouse: Weaver v. Welch, 325 Pa. 571, 578 (1937) ; Ickler Estate, 34 Del. Co. 538 (1946). Therefore, the consideration of the testimony of Mr. Smith, the husband of claimant, will likewise be limited to matters occurring after the death of Mrs. Gabel.

From the competent evidence submitted at the hearing, particularly the letters written by Mrs. Smith to Mr. Bean and the testimony of Mr. Bean's former secretary (one of the present accountants), the court is required to determine whether the transaction in question constituted a completed gift, a gratuitous assignment or a mere direction and authorization from Mrs. Smith to her own attorney.

" 'To constitute a valid gift inter vivos two essential elements must combine: an intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith' ": Rynier Estate, 347 Pa. 471, 474 (1943). The delivery need not be made directly to the beneficiary, nor is it essential that the donee have knowledge of the transaction at the time of delivery to a third party: *Ibid.*

Thus, in Wagoner's Estate, 174 Pa. 558 (1896), a man executed a bond payable to his niece and gave it to a third party to be delivered to her. The court sus-

tained her claim on the bond against her uncle's estate on the theory that there was a completed gift. Similarly, in Rynier Estate, supra, the court sustained a claim on certain sealed promissory notes which decedent delivered to a third party with instructions to turn same over to the payee after her (the maker's) death. In both these cases, however, there was actual delivery of the tangible evidence of the chose in action which was the subject matter of the gift. In the instant case, the subject matter of the alleged gift was not a separate chose in action, represented by a note, bond or other specialty, but was merely a limited portion of Mrs. Smith's claim against Mr. Bean, which said claim was not related to tangible property or to a written instrument representing a particular chose in action but was merely a debt due from Mr. Bean to Mrs. Smith arising from the fact that he had collected money from the Johnson estate on her behalf. He was, therefore, acting as her attorney or agent with respect to the instructions contained in the letters, and such instructions cannot be considered an actual or constructive delivery to Mrs. Gabel or her agent. Thus, at best, the letters written by Mrs. Smith to Mr. Bean constituted merely an assignment of such portion of her claim to Mrs. Gabel rather than a completed gift.

There is, of course, some doubt as to whether the letters written to Mr. Bean by Mrs. Smith actually constitute even a gratuitous assignment rather than being a mere authorization or direction to Mr. Bean, acting as Mrs. Smith's agent or attorney, with respect to the funds in question. In this respect, the instant situation somewhat resembles that in Wood's Estate, 243 Pa. 211 (1914). In that case, the distributees under a will empowered and directed the executors and trustees under the will to pay out of the income of the estate belonging to the distributees an annual stated sum to an uncle. Later, the said distributees claimed to be solely entitled to participate in the dis-

tribution of income. The Supreme Court held that this was merely an executory agreement intended to authorize and empower the executors to make certain application of the funds in question but did not constitute an equitable assignment or completed gift to the uncle, and that the executors were not the agents or representatives of the uncle but were the agents of the distributees. The following language from that decision at page 214 is appropriate here:

". . . It is to be remarked, first, that the agreement as written says nothing in express terms about assigning anything; it is entirely lacking in words which import a transfer of any property. True no particular words or form of instrument is necessary to constitute a valid assignment; but appropriate words which in themselves are so unequivocally expressive of an intention to transfer property are of such common usage, that when these are not employed in a transaction of this kind, a very reasonable inference would be that they were not employed because not expressive of the intention of the parties. . . ."

Assuming, however, that the letters in question might be properly classified as an assignment, it is next necessary to determine whether it was an assignment for value or merely a gratuitous assignment. A. L. I. Restatement of the Law of Contracts, §149(6), provides that:

"An assignee under an assignment given for value is an assignee for value. Any other assignment or assignee is a gratuitous assignment or assignee."

In the instant case, there is no competent evidence whatsoever that any valuable consideration was received by Mrs. Smith in return for the assignment. Nor was there any seal from which consideration might be imported. Accordingly, the court must conclude that the letters in question constituted merely a gratuitous assignment.

Was such a gratuitous assignment revocable at the option of Mrs. Smith after the death of Mrs. Gabel? If the purpose of the gratuitous assignment was to make a gift to Mrs. Gabel and said gift remained uncompleted prior to Mrs. Gabel's death, it is understandable that Mrs. Smith did not have the same feelings of generosity towards Mrs. Gabel's personal representative and decided to revoke the gift. This she had a right to do, unless the circumstances were such as to render the assignment irrevocable. The circumstances constituting irrevocability of a gratuitous assignment are set forth in sec. 158(1) of A. L. I. Restatement of the Law of Contracts, supra, as follows:

"The right acquired by the assignee under a gratuitous assignment is terminated by the assignor's death, by a subsequent assignment by the assignor, or by notification from the assignor received by the assignee or by obligor, unless,

(a) the assignment is in a writing either under seal or of such a nature as to be capable of transferring title to a chattel without delivery thereof and without consideration; or

(b) the assigned right is evidenced by a tangible token or writing, the surrender of which is required by the obligor's contract for its enforcement, and this token or writing is delivered to the assignee; or

(c) the assignor should reasonably expect the assignment to induce action or forbearance of a definite and substantial character by the assignee or a sub-assignee, and before termination of the assignee's right such action or forbearance is induced."

The assignment in the instant case not falling within any of the exceptions to the general rule as above set forth, it must be held that the assignment was revocable by Mrs. Smith at any time prior to actual payment by Mr. Bean.

In any event, the burden of proving a gift is upon the one who alleges it: Watkins, Exec., v. MacPherson,

348 Pa. 467 (1944). A careful consideration of all the evidence in the case has failed to convince the court that there was a completed gift of the $500 to Mrs. Gabel. Accordingly, her personal representative has no interest in the fund in question and his claim thereto is therefore disallowed and dismissed. It consequently· follows that the claim of Mrs. Smith to said fund must be allowed, and the accountants are hereby directed to pay unto Estella M. Smith the sum of $500 out of the assets of decedent's estate.