## Wilson Estate.

Argued November 20, 1972. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Roberts R. Appel,* with him *Charles Foltz Herr,* and *Appel, Ranck, Herr & Appel,* for appellants.

*Harry B. Yost,* with him *Hassel and Yost,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1973:

In March of 1966, the decedent, Tillie E. Wilson, with the assistance of her attorney, Randolph C. Ryder, transferred shares of stock of American Telephone & Telegraph Company, which she then owned individually, in her own name, into the names of herself and her two daughters (appellants) as follows:

1. 140 shares, certificate No. 66T213053, registered as follows: "Mrs. Tillie E. Wilson and Mrs. Nancy W. Crouse, Joint Tenants";

2. 120 shares, certificate No. 66T213054, registered as follows: "Mrs. Tillie E. Wilson and Mrs. Florence W. Ryder, Joint Tenants."

The actual certificates for the stock registered in joint names as stated were delivered by the decedent to her attorney, who was married to her daughter, Florence Ryder, one of appellants. The certificates were then placed by the attorney in the safe deposit box registered in his name and that of his wife, where the certificates remained until after the decedent's death.

Shortly after the new certificates issued, the two daughters of decedent executed irrevocable powers of attorney, dated April 8, 1966. These powers of attorney authorized the decedent and her attorney to transfer all of the interest of the decedent's daughters in the AT&T stock back to Tillie E. Wilson, and specifically referred to the stock certificates by certificate number and number of shares. Both daughters testified that the purpose of the powers of attorney was to enable the decedent to have the money (i.e., the value of the shares) for her well-being "if she needed it."

The decedent in her lifetime received all of the dividends paid on the stock. The dividend checks were made out to the joint names so that the donees had to endorse these checks before depositing them in their mother's account.

Contemporaneously with these events, decedent executed a codicil to her will in which, inter alia, she revoked the appointment of her four daughters as executrices, two of the daughters being appellees here and the other two being appellants. She then appointed the two daughters-appellants her sole executrices.

Appellants, as executrices, did not include the above-mentioned stock certificates in the estate's account. Appellees, two other daughters of the decedent, objected and, after two hearings, the Orphans' Court Division of the Court of Common Pleas of Lancaster County ruled in favor of appellees that the decedent had not made valid inter vivos gifts of the stock. Appellants filed exceptions which were dismissed by the court. This appeal followed.

The law covering inter vivos gifts was discussed in *Martella Estate,* 390 Pa. 255, 258-59, 135 A. 2d 372 (1957), where we said, quoting *King Estate,* 387 Pa. 119, 122, 126 A. 2d 463 (1956) : "To constitute a valid gift inter vivos . . . two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein."

The Orphans' Court Division, relying on *Martella Estate, supra,* held that there was no delivery to the donees and, therefore, there were no completed gifts. In believing that a valid gift cannot be established unless there is actual delivery to the donees the court was in error. Delivery to a third party with instructions to make delivery to the donees may also be sufficient. As we said in *Rynier Estate,* 347 Pa. 471, 474-475, 32 A. 2d 736 (1943) :

". . . delivery need not be made directly to the beneficiary. The instrument may be placed in the possession of a third person for delivery upon the happening of a specified contingency or event, as, for example, the death of the donor; in such cases not only is the delivery valid, but it will be held to relate back to the

time of the initial delivery if that be necessary to effectuate the donor's intention [citing cases]. Nor is it essential that the donee have knowledge of the transaction before the death of the donor, since there is a presumption that a person will accept what is for his benefit . . . and by his subsequent actual acceptance the donee ratifies the original delivery by which the gift was made.

"As the chief factor in the determination of the question whether a legal delivery has been effected is the intention of the donor to transfer title to the donee, as manifested by his words and actions and by the circumstances surrounding the transaction, it is evident that each case must depend largely upon its own facts. The delivery to an agent or custodian is ineffective as a gift inter vivos if it is not accompanied with definite instructions to make delivery in turn to the donee [citing cases]. It is likewise ineffective if the donor indicates an intention to retain title notwithstanding his parting with possession. . . . But where the purpose of the donor to make a present gift clearly appears, and explicit directions are given as to the person to whom final delivery is to be made, as well as the time when and the event or contingency upon which it is to be made, the transaction is upheld as vesting a valid title in the donee to the deed, bond, note, or other instrument which is the subject of the gift."

Applying the reasoning and holding of *Rynier* to the case at bar, when the decedent registered the stock certificates in the joint names of herself and one of her daughters, and then delivered the certificates to her attorney, Randolph C. Ryder, the transfers became completed gifts. The subsequent acts of the donees in executing powers of attorney providing for transfers back to the decedent in the event that "she needed the money for her well-being later" serves as an acknowledgment

by the donees that they had an immediate interest in the stock, otherwise the powers of attorney would have been unnecessary.

*Martella Estate, supra,* upon which the Orphans' Court Division relied, is easily distinguishable on its facts from *Rynier Estate* or the instant case. In *Martella Estate,* although the decedent had changed the registration of the stock, rather than delivering the certificates to a third person, he had placed the certificates in his own small metal box. The alleged donees, two of the decedent's six children, could not claim that, by delivering a key to this box to their sister, who was not one of the donees, Martella was making a delivery to a third party, as was done in *Rynier Estate, supra,* because the sister who received the key testified that she was told by the decedent that: "Every one of his children and it didn't make any difference whether they was (sic) boys or girls, each one would get everything alike." 390 Pa. at 258.

Thus, unlike the instant case, or *Rynier Estate, supra,* there was no effective delivery to a third person in *Martella,* because, in the words of *Rynier Estate,* "delivery to an agent or custodian" was "not accompanied with definite instructions to make delivery in turn to the donee." 347 Pa. at 475.

The fact that the decedent in the instant case continued to receive the income from the securities, as hereinabove indicated, does not destroy the validity of the gift. *Chapple's Estate,* 332 Pa. 168, 2 A. 2d 719 (1938).

Decree reversed. Costs to be borne by the estate.

Mr. Justice POMEROY and Mr. Justice NIX concur in the result.

Mr. Justice EAGEN dissents.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.