## Coleman *v.* Pennsylvania Railroad Company, Appellant.

*Common carriers—Negligence—Porter of Pullman car—Contract exempting carrier from liability for negligence—Constitution of Pennsylvania, Art. XVII, Secs. 1, 3 and 5—Railroads.*

1. No contract, condition or limitation will relieve a carrier from liability to a passenger for the consequence of its own negligence or the negligence of its servants.

2. Where one, not an employee or trespasser, is carried on a railroad, the undertaking on the part of the railroad company is as common carrier, and the party, though he be not a passenger within the ordinary meaning of the word, is yet entitled to the rights of a passenger so far as his safe transportation is concerned, notwithstanding the railroad company may have been rendering a service which it was not bound to render, either at common law or by statute, but under an agreement for exemption from liability for negligence.

3. Where the charter of a railroad company requires it to haul cars "owned or furnished by others," and provides that its railroad "shall be esteemed a public highway for the conveyance of passengers and the transportation of freight......subject to such rules and regulations in relation to the same......as the president and directors may prescribe and direct," it cannot refuse to transport cars of a sleeping car company, sufficient in construction, with certain of the employees of that company therein, but may decline to haul such cars in connection with its passenger trains, or in some way outside its regular method of doing business when dealing with the public; and it may refuse any demand for trans-

portation of passengers or freight where the compliance therewith would involve a departure from the reasonable rules and regulations of the company.

4. In such a case where the railroad company waives a compliance with its rules and regulations, it cannot do so by way of discrimination, and if the regulation be waived for one person, it is waived as to all under like conditions, and it is as though it had never been adopted; and where the railroad company contracts with a sleeping car company for this particular service, it could only perform it in its character as common carrier.

5. Article XVII, Section 1, of the Constitution of Pennsylvania, which provides: "All railroads and canals shall be public highways and all railroad and canal companies shall be common carriers," and Section 3, which provides: "All individuals, associations and corporations shall have equal right to have persons and property transported over railroads and canals and no undue or unreasonable discrimination shall be made, in charges for, or in facilities for, transportation of freight or passengers within the State, or coming from or going to any other state," and Section 5, which provides: "No incorporated company doing business of a common carrier, shall directly or indirectly engage in any other business than that of common carriers," require the court to hold Pennsylvania jurisprudence to be unaffected by the current of authority elsewhere, which seems to sustain the doctrine that a railroad company may by contract secure exemption from liability for negligence in cases where one, neither a passenger, employee or trespasser, is carried on the railroad. The manifest purpose of these provisions was to establish the character of the railroad company as a common carrier, and to restrain such companies, so far as the use of their highway is concerned, from acting in any other capacity.

6. Plaintiff's decedent was employed by the Pullman Company as a porter, and while performing his duties as such on a car transported by the Pennsylvania Railroad Company with one of its passenger trains, was killed in a collision caused by the negligence of the defendant company. Before entering his employment decedent had signed an agreement, the effect of which, if valid, was admitted to be to free the defendant company from any liability for personal injuries in case of accident, whether occurring through its own negligence or otherwise. The charter of the defendant requires it to haul cars "owned or furnished by others," and provides that its road "shall be esteemed a public highway for the conveyance of passengers and the transportation of freight......subject to such rules and regulations in relation to the same......as the president and directors may prescribe and direct." *Held,*

(1) having once contracted with the Pullman Company for the transportation of its cars in connection with its regular passenger trains, the defendant company could only perform it in its character as common carrier, and the service became one which it was bound to perform for all applying under like conditions. (2) It could limit its liability with respect to matters distinct from the actual conveyance of persons and the transportation of property, but as the duty which it performed for the Pullman Company was in its character as a common carrier, it could not limit its liability for negligence resulting in personal injuries to the employees of the Pullman Company transported on its cars, and plaintiff was entitled to recover.

Argued April 2, 1913. Appeal, No. 44, Jan. T., 1913, by defendant, from judgment of C. P. No. 4, Philadelphia Co., June T., 1909, No. 3157, on verdict for plaintiff in case of Bessie G. Coleman v. Pennsylvania Railroad Company. Before FELL, C. J., POTTER, ELKIN, STEWART, and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before CARR, J.

Plaintiff's decedent was a porter on a Pullman car, forming part of section 1 of train 21 on defendant's railroad on the 23d of January, 1909. While on the said car, discharging his duties as a porter in the employ of the Pullman Company, he was killed at Summerhill, Pa., by a rear end collision with the second section of train 21. The collision was due to a mistake in reading signals by the engineer of the second section.

The defendant offered in evidence a contract dated September 14, 1899, between the defendant and the Pullman Company, which provided, inter alia, as follows:

"Sixth. The Pullman Company shall and will fully indemnify the Railroad Company against any and all claims that may be at any time made, as follows:

"(a) Claims of employees of the Pullman Company, or of their representatives, on account of death, personal injury, or otherwise, howsoever occurring or sustained."

The defendant also offered in evidence, a contract be-

tween the decedent and the Pullman Company, dated March 14th, 1905, and providing, inter alia, as follows:

"Fourth.   I assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and hereby, for myself, my heirs, executors, administrators or legal representatives, forever release, acquit and discharge the Pullman Company, and its officers and employees, from any and all claims for liability of any nature or character whatsoever, on account of any personal injury or death to me in such employment or service.

"Fifth.   I am aware that said The Pullman Company secures the operation of its cars upon lines of railroad, and hence my opportunity for employment, by means of contracts wherein said The Pullman Company agrees to indemnify the corporations or persons owning or controlling such lines of railroad against liability on their part to the employees of said The Pullman Company in cases provided for in such contracts, and I do hereby ratify all such contracts made or to be made by said The Pullman Company and do agree to protect, indemnify and hold harmless said The Pullman Company with respect to any and all sums of money it may be compelled to pay, or liability it may be subject to, under any such contract, in consequence of any injury or death happening to me, and this agreement may be assigned to any such corporation or person and used in its defense."

The charter of the Pullman Company was offered in evidence, from which it appeared that the Pullman Company had no powers as a common carrier, its powers being defined by its charter as follows:

"Section 4.   The said corporation shall have power to manufacture, construct and purchase railway cars, with all convenient appendages and supplies for persons traveling therein, and the same may sell or use or permit to be used in such manner and upon such terms as the said company may think fit and proper."

Verdict for plaintiff for $5,000.   The court overruled

defendant's motion for judgment n. o. v., and entered judgment on the verdict. Defendant appealed.

*Error assigned* was, inter alia, the refusal of judgment for defendant n. o. v.

*C. Andrade, Jr.,* with him *J. Frederick Jenkinson* and *John Hampton Barnes,* for appellant.—Coleman was not a passenger: Lewis v. Penna. R. R. Co., 220 Pa. 317; Rose v. Penna. R. R. Co., 17 Pa. D. R. 57; Smallwood v. R. R. Co., 215 Pa. 540; Penna. R. R. Co. v. Price, 96 Pa. 256; Price v. Penna. R. R. Co., 113 U. S. 218 (5 Sup. Ct. Repr. 427); Foreman v. Penna. R. R. Co., 195 Pa. 499; Scott v. R. R. Co., 151 Fed. Repr. 931.

The defendant quoad this action is not a common carrier: Pullman's Palace Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587 (6 Sup. Ct. Repr. 194); Rose v. Penna. R. R. Co., 17 Pa. D. R. 57; Express Cases, 117 U. S. 1 (6 Sup. Ct. Repr. 542, 628); Russell v. Ry. Co., 157 Ind. 305 (61 N. E. Repr. 678); C., R. I. & P. Ry. Co. v. Hamler, 215 Ill. 525 (74 N. E. Repr. 705).

As this is not a case of passenger and common carrier there is no public policy which forbids the contracts here in evidence: Forepaugh v. R. R. Co., 128 Pa. 217; Denver & R. G. R. Co. v. Whan, 89 Pac. Repr. 39; Griswold v. R. R., 53 Conn. 371 (4 Atl. Repr. 261); Blank v. Illinois Cent. R. R., 80 Ill. App. 475; Blank v. Illinois Cent. R. R., 182 Ill. 332 (55 N. E. Repr. 332); Illinois Cent. R. R. v. Fulton, 108 Ill. App. 234; C., R. I. & P. Ry. Co. v. Hamler, 215 Ill. 525 (74 N. E. Repr. 705); Louisville, N., A. & C. Ry. v. Keefer, 146 Ind. 21 (44 N. E. Repr. 796); Pittsburgh, C., C. & St. L. Ry. Co. v. Mahoney, 148 Ind. 196 (46 N. E. Repr. 917; 47 N. E. Repr. 464); Russell v. Ry. Co., 157 Ind. 305 (61 N. E. Repr. 678); Cleveland, C., C. & St. L. Ry. Co. v. Henry, 83 N. E. Repr. 710; Bates v. Old Colony R. R. Co., 147 Mass. 255 (17 N. E. Repr. 633); Hosmer v. Old Colony R. R. Co., 156 Mass. 506 (31 N. E. Repr. 652); Robert-

son v. Old Colony R. R. Co., 156 Mass. 525 (31 N. E. Repr. 650) ; Coup v. Ry. Co., 56 Mich. 111 (22 N. W. Repr. 215) ; Peterson v. Chicago, Etc., R. Co., 96 N. W. Repr. 532; Chicago, M. & St. P. Ry. Co. v. Wallace, 66 Fed. Repr. 506; Hartford Fire Ins. Co. v. R. R., 70 Fed. Repr. 201; Balto. & O. S. W. Ry. Co. v. Voigt, 176 U. S. 498 (20 Sup. Ct. Repr. 385) ; McDermon v. Southern Pacific Co., 122 Fed. Repr. 669; New York Central R. R. Co. v. Difendaffer, 125 Fed. Repr. 893; Wilson v. Atlantic Coast Line, 129 Fed. Repr. 774; Long v. R. R., 130 Fed. Repr. 870; Kelly v. Malott, 135 Fed. Repr. 74; Clough v. Grand Trunk Ry., 155 Fed. Repr. 81; Graft v. B. & O. R. R. Co., 8 Atl. Repr. 206; Johnson v. R. R. Co., 163 Pa. 127; Ringle v. Penna. R. R. Co., 164 Pa. 529; Reese v. R. R. Co., 229 Pa. 340; Jack v. R. R. Co., 43 Pa. Superior Ct. 337; Hoffeditz v. Ry. & Mining Co., 129 Pa. 264.

The defendant may avail itself of Coleman's contract, even although Coleman's contract was not directly with the defendant: Hoffeditz v. Ry. & Mining Co., 129 Pa. 264; Fairchild v. R. R. Co., 148 Pa. 527; Ringle v. Penna. R. R. Co., 164 Pa. 529; Robinson v. B. & O. R. R. Co. (Court of Appeals, Dist. of Columbia, decided March 10, 1913), 222 U. S. 506.

*George S. Munson* and *Abraham M. Beitler,* with them *John C. Asbury,* for appellee.—The contract signed by Coleman, being expressed in general terms, will not be presumed to release the railroad company from liability for injuries caused by its own negligence: Mynard v. Syracuse, Etc., R. R. Co., 71 N. Y. 180; Holsapple v. Rome, Etc., R. R. Co., 86 N. Y. 275; Nicholas v. N. Y. C. & H. R. R. Co., 89 N. Y. 370; Kenney v. N. Y. C. & H. R. R. Co., 125 N. Y. 422 (26 N. E. Repr. 626) ; Perry v. Payne, 217 Pa. 252.

A railroad or other common carrier cannot by contract stipulate against liability caused by its own negligence: Penna. R. R. Co. v. Henderson, 51 Pa. 315;

Willock v. Penna. R. R. Co., 166 Pa. 184; McMinn v. Pittsburgh, Etc., R. R. Co., 147 Pa. 5.

While not a "passenger," Coleman was entitled to protection against the negligence of the railroad: Lockhart v. Lichtenthaler, 46 Pa. 151; Lackawanna & Bloomsburg R. R. Co. v. Chenewith, 52 Pa. 382.

Under the Constitution and statutes of Pennsylvania, the owner of cars, whether for passengers or freight, may have them transported by railroads within the borders of this State, not as a matter of grace, but of right: Logan Coal Co. v. Penna. R. R. Co., 154 Fed. Repr. 497; Trunick v. Smith, 63 Pa. 18; Cumberland Valley R. R. Co.'s Appeal, 62 Pa. 218; Boyle v. Philadelphia & Reading Ry. Co., 54 Pa. 310.

The contract is void since public policy allows no such stipulations between employer and employee: Johnston v. Fargo, 184 N. Y. 379 (77 N. E. Repr. 388; Tarbell v. Rutland Ry. Co., 73 Vt. 347 (31 Atl. Repr. 6) ; Blanton v. Dold, 109 Mo. 64 (18 S. W. Repr. 1149) ; Hissing v. Richmond & D. R. Co., 91 Ala. 514 (8 So. Repr. 776).

OPINION BY MR. JUSTICE STEWART, October 13, 1913:

The general rule that no contract, condition, or limitation will relieve a carrier from liability to a passenger for the consequence of its own negligence or the negligence of its servants, is not open to question, and we need not delay to cite cases in which such contracts have been held to be void as offending against public policy. The contention on part of the appellant is, that the rule does not apply, for the reason that the plaintiff's husband did not stand in the relation of passenger to the defendant company, and that, as to him, defendant was not a common carrier. The doctrine here asserted is not without high judicial sanction. It has prevailed in many jurisdictions in actions between railroad companies and employees of express and news companies, and in other jurisdictions, not so many perhaps, in actions between railroad companies and employees of

sleeping car companies. We need not stop to inquire in what respects the duties of an express or news agent differ from those of a Pullman porter, for while in some of the cases, more particularly that of B. & O. S. W. Ry. Company v. Voigt, 176 U. S. 498, emphasis more or less seems to be given to the differences which bring an express messenger into a relation toward the railroad company resembling somewhat that of an employee, the ratio decidendi is the same in both classes of cases. These decisions rest fundamentally not on difference of character of employment, but on the distinct proposition that no common law duty requires of a railroad, as a common carrier, to transport with its passenger trains cars specially adapted to the exclusive use of express or sleeping car companies; that it has a legal right to perform or refuse such services as it sees fit; and that, therefore, when it does contract to render such service, it may, without offense against public policy, stipulate specially how far its liability for negligence shall extend. While this doctrine has been rejected by the courts of some of the states, it must be admitted that the weight of authority is in its favor. The Supreme Court of the United States has given its sanction to it in the leading case of B. & O. S. W. Ry. Co. v. Voigt, supra, and, as is shown in the very full and satisfactory note to the Colorado case of Denver & Rio Grande R. R. Co. v. Whan, in Vol. 11 L. R. A. (N. S.) 432, a majority of the courts where the question has been adjudicated are in accord in their acceptance of the doctrine. This circumstance, were it an open question with us, would, while of course not controlling, make largely for its acceptance here. But it is not an open question in Pennsylvania. By repeated adjudications we have settled it for ourselves in a way which, though it run counter to the current of more recent judicial decisions in other jurisdictions, can be so well vindicated on principle, and so accords with just conception of what a sound public policy requires, that without disposition to criticize the

decisions of courts holding to a different view, we can see no reason for substituting their conclusions for those of our own which have been deliberately reached and reasserted.

If we allow the word "passenger" to mean no more than it ordinarily imports as now used, especially by carriers in the course of their business, then it is quite true that plaintiff's husband was not a passenger on defendant's train when the accident occurred. So much must be admitted. But then neither was he an employee; nor yet was he a trespasser. It is not easy to define the exact relation in which he stood to the defendant. We do not know that it has been attempted except in the negative way above indicated. One thing is clear, he was in a place he had a right to be; and this being so, it may be that we shall be able with less difficulty to define the exact relation in which the defendant company stood towards him, which after all must be the governing consideration. If as a common carrier it was rendering this particular service of personal transportation, it will of course be admitted that no contract would avail to exempt it from liability for negligence. The contention of appellant is that though a common carrier as to the general public, yet, because of the contract between the defendant company and the Pullman company to the provisions of which the husband voluntarily subjected himself, the defendant company became a private carrier as to him, inasmuch as the service contracted for and rendered was such as at common law the defendant could not have been compelled to render.

It may be conceded that the defendant company, aside from its contract, was under no duty to render the service it contracted for with the Pullman company. It is important, however, to inquire on what ground a refusal to render the service would have been justified. Had the demand been simply for the transportation of a car or cars of the Pullman company, sufficient in construction, with certain of the employees of the Pullman com-

pany therein, such demand could not have been refused. By its charter the defendant company is required to haul cars "owned or furnished by others." If, however, the demand had been that the company haul such cars in connection with its own passenger trains, or in some way outside its regular method of doing business when dealing with the public, it might safely decline. While defendant's charter provides that its railroad "shall be esteemed a public highway for the conveyance of passengers and the transportation of freight," this conveyance and the transportation is made "subject to such rules and regulations in relation to the same......as the president and directors may prescribe and direct." Therefore, if compliance with the demand would involve a departure from the reasonable rules and regulations of the company to which the public were required to conform, the company might well decline. But the rules and regulations are determined by the company, with no restriction on the company's power in this regard, except that the rules and regulations must be reasonable. The company may waive compliance with these, but not by way of discrimination; if it waive for one it must do so for all applying for like services under like conditions, for it is under the constitutional restriction that no undue or unreasonable discrimination shall be made "in facilities for transportation of freight or passengers within the State or coming from or going to any other state." Therefore it follows, if the regulation be waived for one person, it is waived as to all under like conditions, and it is as though it had never been adopted. And it must further follow, that once having contracted with the Pullman company for this particular service, it could only perform it in its character as common carrier, that is to say, the service became one which it was bound to perform for all applying under like conditions. In Sandford v. Railroad Company, 24 Pa. 378, this point was directly ruled. The facts of that

case appear in so much of the opinion of Chief Justice LOWRIE as we here quote:

"The railroad company, defendant, on the 28th October, 1854, entered into a contract with the International Express Company, giving to the latter for three years the exclusive right of the railroad for all express purposes, at the various stations on the road, or so far as the said company controlled the matter, and shall continue to control the same...... In pursuance of this contract the superintendent of the railroad company, on the 30th October, 1854, gave to Howard & Co., an express company, written notice that 'an arrangement had been made with the International Express Company which gives to that company the exclusive right of this road for all express purposes; that the company takes the route on Monday, November 6th, and that this railroad company will not carry the express matter or messengers of any other persons or company after Saturday, November 4th.'

"The substance to be found in the answer and in the evidence show that the railroad company is willing to carry all express matter of Howard & Co. in their freight trains, which go at less speed than their passenger trains, but that its purpose is to give to the International Express Company the exclusive privilege of transportation in their passenger trains. The railroad corporation has no right to do this. The power to regulate the transportation on the road does not carry with it the right to exclude any particular individuals, or to grant exclusive privileges to others. Competition is the best protection to the public, and it is against the policy of the law to destroy it by creating a monopoly of any branch of business. It cannot be done except by the clearly expressed will of the legislative power. Limited importance may perhaps limit the amount of business done by a railroad company, but it can never furnish an excuse for appropriating all its energies for any particular individuals. If it possessed this power it

might build up one set of men and destroy others, advance one kind of business and break down another; and might make even religion and politics as the tests in the distribution of its efforts. Such a power in a railroad corporation might produce evils of the most alarming character. The rights of the people are not subject to any such corporate control. Like the customers of the grist mill, they have a right to be served, all things equal, in the order of their applications. A regulation, to be valid must operate on all alike. If it deprives any persons of the benefits of the road or grants exclusive privileges to others, it is against law and void."

That a railroad company chartered for the convenience of the public in conveyance and transportation may privately contract, and so limit its liability with respect to matters distinct from the actual conveyance of persons and the transportation of property, is not to be disputed; it may buy, it may build and it may do many things in the way of supplying itself with the equipment necessary for the conduct of its business. These things it does by virtue of its corporate power as incidental to its business, but not as a common carrier. Before referring to our own cases bearing on the question we think it quite appropriate to direct attention to the opinion of Mr. Justice BRADLEY, in the case of Railroad Company v. Lockwood, 84 U. S. 357, not merely because the doctrine we have advanced is there sanctioned, but because it is there so fully vindicated on reason and settled principles that it would be idle to attempt anything further in its support.

"A common carrier may, undoubtedly, become a private carrier, or a bailee for hire, when as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry. For example, if a carrier of produce running a truck boat between New York City and Norfolk should be requested to cary a keg of specie or a lot of expensive furniture, which he could justly refuse to take, such agree-

ment might be made in reference to his taking and carrying the same as the parties chose to make, not involving any stipulation contrary to law or public policy. But when a carrier has regular established business for carrying of certain articles, and especially if that carrier be a corporation created for the purpose of carrying trade, and the carriage of the articles is embraced within the scope of its chartered power it is a common carrier, and a special contract about its responsibility does not divest it of the character."

However much the doctrine of this case has, by inference, been modified, or repudiated in the more recent case of B. & O. S. W. Ry. Co. v. Voigt, supra, nothing can be found in our own decisions indicating the slightest departure from it. That it is the doctrine that has prevailed with us the following cases aptly illustrate. In Lockhart v. Lichtenthaler, 46 Pa. 151, the party for whose death, through negligence, damages were claimed, was employed as brakeman upon certain cars belonging to a private firm which were being run over the defendant company's road by a locomotive belonging to the company and in charge of the company's engineer and conductor. A recovery was sustained. The full significance of this ruling is better understood in the light of what the same judge who wrote the opinion says of it in the later case of Lackawanna & Bloomsburg R. R. Co. v. Chenewith, 52 Pa. 382. He (THOMSON, J.,) there says:

"In Lockhart v. Lichtenthaler, 10 Wright (46 Pa.) 151, we held that a person in charge of a private car and acting on it as a brakeman, was not a servant of the company so as to preclude his widow from recovering for the loss of his life by the negligence of the servants of the road. Strictly a passenger he was not, nor was he a servant of the company, neither earning wages from it nor bound to obey its orders, excepting in regard to the property especially in his charge. We held him entitled to the rights of a passenger, so far as injury to him

was concerned, and that case rules the present in this particular."

The case in which that was cited is still more directly in point. There, at the request of an owner of a freight car, the railroad company through its officers, at the request of the owner, attached his car to a passenger train, contrary to the instructions and rules of the company, the owner agreeing in consideration for the unusual services, that he himself would run all risks. Here we have a clear case in which the railroad company was rendering a service which it was under no common law duty to perform and which it could have refused without liability on its part, because in violation of its own reasonable rules and regulations. As the train proceeded it encountered an obstruction; collision resulted; the freight car was thrown from the track, and the owner severely injured in the wreck. The action was by the owner of the freight car to recover damages for his personal injury and the loss of his goods, alleging negligence of the defendant company as the approximate cause. One ground the defendant urged was the agreement plaintiff had made with the defendant's agents that if this special accommodation were allowed him he would assume all risks. Referring to this feature of the case, the opinion proceeds as follows:

"The arrangement was made with the parties having full power over the special matter, and to them the plaintiff was authorized to look and was required to look to no other. When, therefore, they consented to hitch on his cars to the passenger train, even at his urgent solicitation,—and we have not a particle of evidence that other inducements to do the act were held out, excepting freedom from responsibility as a consequence of the attachment,—we must presume that it was done with a view to the compensation to be paid, on the one hand, and the usual care to be exercised on the other. The argument, however, is that the plaintiff was guilty of such a wrong in asking for a permit for his car to

be attached, that whether the act contributed to the dis-
aster or not, he is to be treated as a trespasser and not
entitled to any compensation for injuries not wilfully
done him.  This we think is not the law, unless in a case
where the will of the agent is controlled and subverted
by improper influences, he is induced to do that which is
manifestly beyond the scope of his powers.  That there
was a regulation against running freight cars with pas-
senger trains, might be admitted, although it was not
properly proven; yet that neither proved that it might
not be safely done, nor that if the company undertook
to do it, they might lay aside the duty of care and com-
mit such case to the guardianship of chance.  See Powell
v. Penna. R. R. Co., 8 Casey (32 Pa.) 414.  The great
overstatement of the efforts made to induce the defend-
ants to take the plaintiff's cars, is the main pillar upon
which the argument against this portion of the charge
is constructed.  Fairly stated, the facts were that the
plaintiff and another were desirous to go to Carlisle by
a certain date and urged to be taken on the train by the
company, as they had missed connecting with the freight
train.  The conductor and freight agent considered of
the matter, inquired into the capacity of the cars to
run with passenger cars; made up their minds to take
them on their train on a promise not to be held answer-
able for any injury resulting from the arrangement.
Was the plaintiff put outside the jurisdiction of the law
because he trusted to their judgment to do an act within
their power to do, and especially when the act itself is
not at all implicated in the disaster?...... The volun-
tary presence of the traveler, if not wrongful, is so
much a matter of individual choice that its propriety is
never an element to be inquired into in claiming or rais-
ing damages for injury.  People have a right to travel
when they please, and will be compensated for injuries
if occasioned by the negligence of those engaged in trans-
porting them, if they have not contributed to the im-
mediate disaster by their own negligence, whatever

might be said against the propriety of their journeying. It is no answer to plaintiff's claim, therefore, to argue that if he had not had his cars attached and been present, he would not have been injured. This was manifestly not the proximate cause of the injury, and not to be considered unless it can be shown that he was a trespasser in being on the train at the time. This he was not; for he was there by permission and under the contract of parties competent to give him authority to be there. His right to damages, therefore, could only be rested upon an inquiry into the question of whose was the immediate, not the remote cause of the injury." ·

On principle it is impossible to distinguish this case from the one at bar. It stands unchallenged to this day as an authority that in every case where one, not employee or trespasser, is carried on a railroad, the undertaking on the part of the railroad company is as common carrier, and the party though he be not a passenger in the ordinary meaning of that word, is yet entitled to the rights of a passenger so far as his safe transportation is concerned. In that case the railroad company was rendering a service which it was not bound to render either at common law or by statute but under an agreement with the party for exemption from liability for negligence. The service was fully within the scope of the power of the company notwithstanding its unusual character, and notwithstanding it was in violation of its own rules and regulations we yet held it to be a common carrier with respect to that service. Considerations of public policy demand the strict enforcement of this rule as much now, and perhaps more, than when it was first declared.

So far we have concerned ourselves with common law principles. It is to be added that the provisions of our State Constitution have a significance in this connection which, if there were nothing more, would require us to hold our own jurisprudence unaffected by the current of authority which seems to sustain the doctrine that a

railroad company may in such cases as this secure by contract exemption from liability for negligence. Article XVII, Section 1, provides as follows: "All railroads and canals shall be public highways, and all railroad and canal companies shall be common carriers." Section 3 provides: "All individuals, associations and corporations shall have equal right to have persons and property transported over railroads and canals and no undue or unreasonable discrimination shall be made, in charges for, or in facilities for, transportation of freight or passengers within the State, or coming from or going to any other state." And in Section 5, it is provided that "No incorporated company doing business of a common carrier, shall directly or indirectly, engage in any other business than that of common carriers." The manifest purpose of these provisions was, first, to establish the character of a railroad company as common carrier; second, to restrain such companies, so far as the use of their highway is concerned, from acting in any other capacity.

We are reminded that in several of our cases we have ruled that persons employed on trains, as was this plaintiff's husband, are not passengers. It is only necessary to say in reply that in each of the cases referred to the question before the court was as to what the word "passenger," as used in the proviso of the Act of April 4, 1868, P. L. 58, included. In this proviso "passengers" were exempted from the operation of the statute which had expressly included "persons lawfully engaged or employed in or about any train or car of the railroad company." What we held and all that we hold in any of these cases, was that this class having been specifically included in the general provisions of the act, it was not the legislative intent by the proviso to exclude them: Penna. R. R. Co. v. Price, 96 Pa. 256.

It being conceded that plaintiff's husband was rightfully where he was when the accident occurred, and that he was not an employee of the defendant company, the

question of his actual relation to the defendant company is not, as we have said, the. governing one.   The one question we have considered is whether the defendant company was acting in its capacity of common carrier in conveying the plaintiff's husband on the occasion when the accident occurred.   Our conclusion is that it was so acting.   Not only considerations of public policy invite us to so hold, but the plain provision in the Constitution which forbids railroad companies from engaging in any business except as common carriers required it.   It follows that the agreement made by the plaintiff's husband exempting defendant from responsibility for its negligence was not available as a defense to the action.   The assignments of error are overruled and the judgment is affirmed.