# Murray *v*. Philadelphia & Reading Railway Co., Appellant.

*Negligence—Railroad companies—Pullman porter—Contract ex-*
*empting carrier from liability for negligence—Sudden stopping of*
*train—Presumption of negligence—Case for jury.*

1. A porter on a Pullman car which is being hauled by a railroad company, though not a railroad passenger in the ordinary meaning of the word, is yet entitled to the rights of a passenger so far as his safe transportation is concerned and although in his contract of employment he has released the Pullman company and the railroad company from responsibility for negligence, yet such an agreement is not available as a defense to an action and he may recover from the railroad company for injuries resulting from the negligence of its servants.

Coleman v. Pennsylvania Railroad Company, 242 Pa. 304, followed.

2. Where in an action against a railroad company for personal injuries sustained by a Pullman porter, there was evidence, though contradicted, that the train on which plaintiff was working, while running at the rate of about forty miles an hour, came to a sudden stop, throwing plaintiff violently upon the platform and causing severe personal injuries, the burden was cast upon the railroad company to show that the sudden stopping of the train was not caused by the negligence of its servants and in the absence of such evidence the case was properly submitted to the jury.

Argued Jan. 18, 1915. Appeal, No. 237, Jan. T., 1914, by defendant, from judgment of C. P. No. 1, Philadelphia Co., June T., 1913, No. 967, on verdict for plaintiff, in case of Arthur N. Murray v. Philadelphia & Reading Railway Company. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $20,000, which the court subsequently reduced to $14,000 and entered judgment on the verdict as reduced. Defendant appealed.

*Error assigned,* among others, was in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*C. Andrade, Jr.,* with him *William Clark Mason* and *J. Frederick Jenkinson,* for appellant.—The relation of passenger and carrier did not exist between plaintiff and defendant: Rose v. Penna. R. R. Co., 17 Pa. D. R. 57; Lewis v. Penna. R. R. Co., 220 Pa. 317.

The case of Coleman v. Penna. R. R. Co., 242 Pa. 304, does not rule the case at bar.

The fact that the car gave a jerk and that such jerk threw the plaintiff down is not evidence of negligence: Chicago, Burlington & Quincy R. R. Co. v. Hazzard, 26 Ill. 373; Muller v. Second Ave. R. R. Co., 48 N. Y. Superior Ct. 546; International & Great Northern Ry. Co. v. Copeland, 60 Tex. 325; Hayes v. Forty-Second St. & Grand St. Ferry R. R. Co., 97 N. Y. 259; Jacksonville St. Ry. Co. v. Chappell, 21 Fla. 175; Stager v. Ridge Ave. Pass. Ry. Co., 119 Pa. 70; De Soucey v. Manhattan Ry. Co., 15 N. Y. Supp. 108; Bradley v. Ft. Wayne & Elmwood Ry. Co., 94 Mich. 35; Saunders v. Chicago & N. W. Ry. Co., 6 S. D. 40; Hite v. Metropolitan St. Ry. Co., 130 Mo. 132; Bradley v. Second Ave. Ry. Co., 35 N. Y. Supp. 918; Etson v. Ft. Wayne & Belle Isle Ry. Co., 68 N. W. Repr. 298; Black v. Third Ave. Ry. Co., 2 N. Y. App. D. 387; Heyward v. Boston & Albany R. R. Co., 169 Mass. 466; Nelson v. Lehigh Val. R. R. Co., 25 N. Y. App. Div. 535; Ayers v. Rochester Ry. Co., 156 N. Y. 104; Sims v. Metropolitan St. Ry. Co., 65 N. Y. App. Div. 270; Frohriep v. Lake Shore & Michigan So. Ry. Co., 131 Mich. 459; Timms v. Old Colony St. Ry Co., 183 Mass. 193; Yazoo & Mississippi Valley R. R. Co. v. Humphrey, 83 Miss. 721; Faul v. North Jersey St. Ry. Co., 70 N. J. L. 795; Hedrick v. Missouri Pacific Ry. Co., 195 Mo. 104; Conroy v. Detroit United Ry., 139 Mich. 173; Needham v. Interborough Transit Co., 48 N. Y. Misc. 522; Norminton v. Interborough Transit

Co., 48 N. Y. Misc.. 526; Flynn v. Interborough Rapid Transit Co., 48 N. Y. Misc. 529; Kiefer v. Brooklyn Heights R. R. Co., 111 N. Y. App. Div. 404; Adams v. New York City Ry. Co., 116 N. Y. App. Div. 315; Molloy v. New York City Ry. Co., 98 N. Y. Supp. 211; Bollinger v. Interurban St. Ry. Co., 50 N. Y. Misc. 293; Jameson v. Boston Elec. Ry. Co., 193 Mass. 560; Sanderson v. Boston Elec. Ry. Co., 194 Mass. 337; De Yoe v. Seattle Electric Co., 53 Wash. 588; Crowley v. Boston Elec. Ry. Co., 90 N. E. Repr. 532; Patterson's Admr. v. Louisville & Nashville Ry. Co., 128 S. W. Repr. 1068; Donovan v. Pullman Company, 91 N. E. Repr. 882; Levin v. Philadelphia & Reading R. R. Co., 228 Pa. 266.

*Wm. T. Connor,* with him *John R. K. Scott,* for appellee.—Plaintiff was entitled to the rights of a passenger: Lockhart v. Lichtenthaler, 46 Pa. 151; Lackawanna & Bloomsburg R. R. Co. v. Chenewith, 52 Pa. 382; Coleman v. Penna. Railroad Company, 242 Pa. 304.

The sudden stopping of the train was prima facie negligence: Clow v. Pittsburgh Transit Co., 158 Pa. 410; Dixey v. Philadelphia Traction Co., 180 Pa. 401; St. Clair v. Edison Electric Light Co., 38 Pa. Superior Ct. 228; Tilton v. Philadelphia Rapid Transit Co., 231 Pa. 63; Cahill v. Philadelphia Rapid Transit Co., 52 Pa. Superior Ct. 561; Hartman v. Western Maryland Ry. Co., 246 Pa. 460.

The evidence of negligence was not overcome by evidence that the act of stopping was properly performed and recovery for plaintiff was therefore proper: Hartman v. Western Maryland Co., 246 Pa. 460.

OPINION BY MR. JUSTICE POTTER, April 19, 1915:

This was an action of trespass brought by the plaintiff to recover damages for personal injuries which he had sustained through the alleged negligence of the defendant company. It appears from the record that on November 24, 1911, plaintiff was employed as a porter

on a Pullman car which was attached to a train of the
defendant company, running from Philadelphia to Wil-
liamsport.  According to the testimony of the plaintiff,
as the train was approaching Mahanoy Junction it was
suddenly and violently stopped, and plaintiff, who was
at the time engaged in sweeping out the rear of the car,
was thrown violently down, with such force as to render
him unconscious.  It was alleged that the injuries which
he received, resulted in rendering him a cripple, and that
since the accident he has been unable to work, or to care
for himself.  It was contended on behalf of defendant,
that the evidence did not show negligence upon its part,
and further that under plaintiff's contract of employ-
ment, in connection with a contract between defendant
and Pullman's Palace Car Company, the plaintiff had
waived or released all claims for damages against both
companies.  At the trial a point for binding instructions
in favor of defendant was refused by the trial judge,
and the question of defendant's negligence was sub-
mitted to the jury.  The verdict was in favor of plain-
tiff.  A motion for a new trial was refused, as was a
motion for judgment for defendant non obstante vere-
dicto, and judgment was entered on the verdict.  Defend-
ant has appealed.  The first assignment of error is to
the refusal of defendant's point requesting binding in-
structions, and it raises all the questions urged by coun-
sel for appellant.  The decision in Coleman v. Penna.
R. R. Co., 242 Pa. 304, is controlling here.  It broadly
reiterated and affirmed the conclusion "that in every
case where one, not employee or trespasser, is carried on
a railroad, the undertaking on the part of the railroad
company is as common carrier, and the party though
he be not a passenger in the ordinary meaning of that
word, is yet entitled to the rights of a passenger so far
as his safe transportation is concerned."  In that case
also there was involved the right to recover for injuries
to a Pullman car porter.  Reference to the record shows
that the language in the contracts of employment in the

two cases, is almost identical. A clause waiving the rights of a passenger and releasing the railroad from all claims on account of injury was in the Coleman case, signed by the porter. But it was held that notwithstanding the terms of the agreement, his widow was entitled to recover damages against the railroad. Our Brother STEWART, after an elaborate consideration of the question, and of the authorities, said (p. 320) : "It being conceded that plaintiff's husband was rightfully where he was when the accident occurred, and that he was not an employee of the defendant company, the question of his actual relation to the defendant company is not, as we have said, the governing one. The one question we have considered is whether the defendant company was acting in its capacity of common carrier in conveying the plaintiff's husband on the occasion when the accident occurred. Our conclusion is that it was so acting. Not only considerations of public policy invite us to so hold, but the plain provision in the Constitution which forbids railroad companies from engaging in any business except as common carriers required it. It follows that the agreement made by the plaintiff's husband exempting defendant from responsibility for its negligence was not available as a defense to the action." The facts of the present case bring it clearly within the principle thus announced, so that we have only to consider whether there was evidence from which the jury may have reasonably inferred that the defendant company was guilty of negligence which caused the plaintiff's injury. The negligence averred in the declaration was in connection with the operation of the train and locomotive, whereby the train was suddenly and violently stopped, or slowed down. Reference to the charge of the trial judge shows that the jury were instructed that no presumption of negligence upon the part of defendant arose out of the fact of the accident. He said, "the burden is upon the plaintiff to prove to you that the train upon which he was riding was slowed down or stopped in a

negligent manner, and that any injuries which he received were the direct result of the carelessness and the negligence of the employees of the defendant company," and again, "Remember that the burden of proving this is upon the plaintiff. He must satisfy you that the train was slowed down or stopped in a careless and negligent fashion, and that he was injured as a result of such careless slowing down or stopping. Has the plaintiff satisfied you, by the testimony, that the train was slowed down and stopped in an unusual and careless fashion, and that he was injured as a result of the careless slowing down or stopping of the train? If he has not, as I have already said, your verdict must be for the defendant. If he has, then your verdict must be for the plaintiff." An examination of the testimony shows that evidence was offered, which if credited by the jury, was sufficient to reasonably justify an inference of negligence in the management of the train. The plaintiff testified that at the time of the accident he was sweeping out the end of the car. The train was running about forty miles an hour, and all at once it came to a sudden stop. Witness was thrown some six or eight feet out on the platform, striking his back against the vestibule. Then he rebounded and his head struck the door. The stop was not such as a regular train would make at a station. It was not a usual stop. William Owens, another Pullman porter, testified that the train just came to a sudden stop. Witness was in a little close place, and had to brace himself to keep from falling down. Some of the dishes were thrown down and were broken, and some of the knives were jarred off the shelves. It was a very sudden stop. He said: "In the nine years I had worked on railroad trains I had never felt such a stop before." One of the passengers testified: "I was sitting with some of the fellows in the rear of the car. There was a sudden, quick jerk. Some of the men were thrown forward in their seats." One of the men was sort of lurched across the aisle. Heard the dishes crash up in the

buffet end of the car. Another passenger said: "I was sitting on the arm of a chair watching a card game that was going on, and the train very suddenly gave a severe jolt. I don't think it came to an actual stop, but I was thrown off the arm of the chair, and had to catch the chair on the other side of the aisle to keep from falling." Some of the men were thrown forward in their seats. There was other evidence to the same effect. On behalf of the defendant, the engineer and the trainmen testified that there was nothing unusual in the manner in which the brakes were applied or the train slowed down. While defendant's witnesses denied that there was in fact, anything unusual about the stopping of the train, they admitted that if the stop was made in the manner, and with the effects described by plaintiff and his witnesses, it would have been an unusual and careless way of stopping, in the absence of some emergency making it necessary. What we said in Tilton v. Philadelphia Rapid Transit Co., 231 Pa. 63, with reference to the operation of a street railway car, is just as appropriate to the management of a railroad train. We there said: "Under ordinary circumstances, with the car under proper control, when it is brought to a stop by the motorman, it is not done so abruptly as to injure a passenger, by throwing him forward against the seat in front of him. Yet that was what occurred in this case, if the testimony of the plaintiff is to be credited. Such an unusual manner of stopping the car called for explanation by the defendant......But, in the absence of any explanation, the occurrence as described in the testimony of plaintiff, was sufficient to justify an inference of negligence in the management of the car." In the case at bar; while counsel for appellant admit that there was evidence tending to show a sudden and violent stop of the train, they contend that it was for the plaintiff to explain the cause of the jolt or the sudden stop. They are mistaken in this view. It was not the duty of plaintiff to explain an unusual and apparently uncalled

for act upon the part of the engineer. On the contrary, it was the duty of defendant to explain the necessity for making such an abrupt stop. If it was made, as the evidence of the plaintiff tended to show, then it was as RICE, P. J., said in Cahill v. Philadelphia Rapid Transit Co., 52 Pa. Superior Ct. 561 (565) : "An act which, in the nature of things, the defendant reasonably would be expected to be able to account for, and the plaintiff would not be. Therefore, in the absence of evidence accounting for the negligent act, the jury would be justified in concluding that the employees of the defendant in charge of the car, with authority to regulate its movement, were responsible for it. ..... This is not inferring negligence on the part of the defendant from the mere happening of the accident, but is the proper application of the principle that, where the thing which causes the injury is shown to be under the management of the defendant, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

With his hand upon the throttle, and in close touch with the air brake, the engineer usually has the movement of the train under good control, and the passengers are not unduly disturbed by a stop. If in this case, a sudden application of the brake became necessary, in order to avoid an impending collision or for some other good reason, it was the duty of defendant to show that fact, by way of explanation. But no such excuse was offered. Defendant stood squarely upon its denial that an abrupt stop was made, or that anything unusual occurred in checking the speed of the train at the time and place in question. As to the principal fact, there was a square conflict of evidence. That offered on behalf of plaintiff tended to show positive negligence in the operation of the train and lack of proper control by the engineer. On the part of the defendant, the alleged act

of negligence was denied.   Which version of the occurrence was to be accepted?   That was for the jury to say, the issue being clearly one of fact.   No complaint is made of the manner in which the issue was submitted to the jury.   No exception was taken to the charge of the court.   Our examination of the record has shown nothing which would have justified the trial judge in taking the case from the jury, or in entering judgment for the defendant non obstante veredicto.

The assignments of error are overruled, and the judgment is affirmed.