## Caplan, Appellant, *v.* Pittsburgh.

Argued October 14, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Marjorie Hanson Matson,* with her *Maurice Parker,* for appellant.

*David Stahl,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 17, 1953:

This is an action to quiet title to real estate under the provisions of Rule 1061 (b) (2) and (3) of Pennsylvania Rules of Civil Procedure. The alleged cloud relates to a clause in the deed to plaintiff's predecessor in title. The court below overruled preliminary objections to defendant's answer and new matter and dismissed the complaint. This appeal followed.

The City of Pittsburgh, the defendant, acquired title at a tax sale to 819 Fifth Avenue in that city. After the period of redemption had expired the city sold the premises to Solomon Caplan, father of plaintiff, for $4,000. The sale was made pursuant to an agreement between the city and buyer that no damages would be claimed for the future widening of Fifth Avenue. The agreement of sale, containing the clause in question, was approved by the City Council and by the Court of Common Pleas: Act of May 21, 1937, P. L. 787, as amended, 72 PS 5878 (a) et seq. Thereafter the city deeded the premises to Solomon Caplan, who as grantee made the following covenant in the deed: "THE GRANTEE, or his successors in title hereby covenant and agree that if, at any time in the future, the City of Pittsburgh by proper action condemns for street widening purposes for public use the following part of the above described real estate, no claim for damages will be filed or expected by the above grantee or his successors in title." The portion of the real estate affected by the covenant is an area of approximately 21 by 22 feet, and is described in the deed by metes and bounds. The deed was recorded. By devise and various mesne conveyances Samuel Caplan, the plaintiff, is now the owner of such real estate.

Plaintiff maintains that the covenant created *an interest in land,* which was not then vested, but which was to commence "at any time in the future" when the city might condemn the described portion for street widening purposes, and should an interest be thus created it would be void as a violation of the rule against perpetuities. As an alternate reason for striking down the covenant plaintiff argues that even though it be held that the clause does not create an *interest in land,* nevertheless the clause is void *as a covenant running with the land* since such covenants are only enforceable when they create "land interests, easements or servitudes". Plaintiff therefore maintains that the covenant is void and constitutes a cloud upon the title which he seeks to have removed.

Despite the learning, research and effort expended by counsel, it is apparent that the covenant does not create an *interest in land effective in futuro.* If the grantee by the covenant sought to create an interest which might possibly *commence* beyond the "period of life or lives in being and twenty-one years, allowing for the period of gestation", unquestionably such interest would be void for remoteness under the rule against perpetuities: *Warren's Estate,* 320 Pa. 112, 182 A. 396; *Harrah Estate,* 364 Pa. 451, 72 A. 2d 587, and the many cases therein cited. But as pointed out by Gray in The Rule Against Perpetuities, sec. 329, p. 360 (4th Ed. 1942): "The Rule against Perpetuities concerns rights of property only, and *does not affect the making of contracts* which do not create rights of property. Thus a promise . . . on a future event is good, although such event may not happen within twenty-one years after lives in being, . . ." (Italics supplied)

In order for covenants to *run with the land* ordinarily they must affect the land and are intended to pass with it. Covenants which are merely personal do

not so run: *DeSanno v. Earle,* 273 Pa. 265, 117 A. 200;
21 C. J. S., Covenants, sec. 54, and cases cited therein.

We agree with the learned court below that the
covenant constitutes "a covenant not to sue". Pro-
fessor Williston in his work on Contracts states that
*a contract not to sue* is in effect a *release* and is there-
fore *a present discharge*: Vol. Six, Williston on Con-
tracts (Revised Edition) sec. 1823 p. 5164. This sec-
tion reads: "A release properly is a present discharge;
and a release of a right to be acquired *in the future* is,
therefore, anomalous, and, in the view of early law-
yers, an impossibility; but a covenant of perpetual for-
bearance has been from early times, in order to avoid
circuity of action, a bar at law to an action, and if
the covenantee or covenantees are the only defendants,
a covenant of permanent forbearance is, therefore, as
effective as a release. The distinction between such
a covenant and a release is, nevertheless, of importance,
for a covenant not to sue one or any number less than
all of several joint debtors does not have the conse-
quences of a release, and is given only its literal mean-
ing. *There is no doubt that a release of a possible con-
tingent liability under an existing contract is effective,*
and, though the early law did not concern itself with
implications, deeming the express words of a writing
a conclusive limit of its meaning, there is no doubt in
modern times that an attempted release of a future
right must be construed as amounting at least to a
covenant not to enforce the right whenever it arises.

"Strictly speaking, every contract for a future sale
or assignment of tangible or intangible property in-
cludes a contract to discharge a right in the future,
that is, the right of the seller or assignor in the prop-
erty, but performance of such a contract involves also
the creation of a similar right in the buyer or assignee.
**In the present section** only such transactions are in-

cluded where a right is wholly discharged without the creation of a corresponding right in another person.

*"Such discharges intended to operate in the future may be in the form of a waiver or of a promise, as well as of a release or covenant not to sue. In any case, if supported by sufficient consideration or by a seal, where seals still have their common-law effect, it is given the effect of a contract not to assert a right of the sort described. Such contracts are valid unless opposed to public policy."*

In Section 1751A it is stated, p. 4964: "There is no technical reason why a *contract* for the future discharge of a claim should not be valid. Confusion is sometimes caused by failing to distinguish attempted conveyances of future rights from contracts. The possibility of making conveyances is limited by the existence of something that at least can be regarded as having present identity, but the *power to contract has no such limitation.* There is no reason for denying a *contract operation* according to its terms, . . ." (Italics supplied)

No case has been cited, and our research has revealed none, which precludes, where public interests are not involved, the enforcement of a *contract not to sue.* For example, public interest prevents a common carrier from enforcing a waiver or release by a passenger of liability because of negligence of the carrier: *Coleman v. Pennsylvania Railroad Company,* 242 Pa. 304, 89 A. 87; *Murray v. Philadelphia & Reading Railway Co.,* 249 Pa. 126, 94 A. 558; *Rogers v. Philadelphia & Reading Railway Co.,* 260 Pa. 430, 103 A. 873. No such public interest is involved in the enforcement of a contract or release wherein, for a valuable consideration, an owner of real estate agrees to waive and release damages for the taking, by condemnation, of land in a street widening proceeding.

The consideration for this covenant must be regarded as included in that named in the deed, viz.: $4,000. It is reasonable to suppose that, in agreeing upon the amount of consideration, the parties took into account grantee's waiver of claim for damages in the proposed widening of the street. Furthermore, a deed being under seal presumes a valuable consideration. There is no allegation of failure of consideration.

The deed conveyed a fee in *all* of the ground. No portion was reserved by the grantor; no easements were thereby created; no other interests were transferred either *in praesenti* or *in futuro*. The contract—for that is what the covenant is—provides that when the city widened the street and through *eminent domain proceedings* took the designated portion of the land, the grantee promised not to sue for damages and therefore waived same. This constituted an effective *release*. Such a proceeding created no interest *in futuro*, but *presently released* all future damages. The grantee made this covenant not only for himself but for "his successors" as well.

There is no question here presented of "covenants running with the land". The deed, in which the release was included, was duly *recorded*. The grantee having *released* the city from liability for damages, for a valuable consideration, and having recorded the instrument, any future transfers of title were with notice and therefore subject to such covenant. Claims for future *taking* by the city and for damages having been effectively extinguished, no longer existed.

We have consistently decided that a recorded release or agreement not to sue, binds not only the covenantor but his successors in title. As early as 1869, in *Groh v. Eckert*, 3 Brewster 116, this Court held that a release of a railroad company by the owner

of land from all damages caused by the construction of the railroad does not convey title in the land, but merely released the railroad from damages. In *Commonwealth v. Fisher*, 1 Penrose & Watts 462, 470, a release was given to the Commonwealth for damages relating to the construction of a canal. The release was upheld against a successor in title. In *Shields v. City of Pittsburgh*, 252 Pa. 74, 97 A. 124, a release was sustained relating to a change of grade. In *Brush v. Lehigh Valley Coal Co.*, 290 Pa. 322, 138 A. 860, and *Moore v. Stevens Coal Company*, 315 Pa. 564, 173 A. 661, releases of future damages were upheld, relating to culm from coal mining operations. In *Pennsylvania Range Boiler Co. v. Philadelphia*, 344 Pa. 34, 37, 23 A. 2d 723, the principle was affirmed, but the release was not enforced because it was *not recorded.* The opinion writer did state that the release "creates an interest or right in the land" (p. 39). Obviously this was inadvertent dictum. In *Tabor Street (No. 1)*, 26 Pa. Superior Ct. 167, release of damages because of grading of street was upheld. *Kellert v. Rochester & Pittsburg Coal & Iron Company*, 226 Pa. 27, 74 A. 789, and *Atherton v. Clearview Coal Co.*, 267 Pa. 425, 110 A. 298, were coal mining cases. The owners of the surface of land released owners of mining rights from all future damage due to faulty mining and surface subsidence. The releases were held valid. And in *Manius v. Housing Authority of the City of Pittsburgh*, 350 Pa. 512, 39 A. 2d 614, an agreement between the authority and tenant was held valid which released the authority from all damages from its negligence.

*Miller v. Beaver Falls*, 368 Pa. 189, 82 A. 2d 34, has not the slightest application. That case referred to compensation to owners where land is *plotted for park* or playground and declaring when compensation must be paid. The question of plotting of streets and

what an owner may thereafter receive when the street is physically opened, was not involved in that case and has no place in the present proceeding. All damages in the present case were waived and released by the present covenant.

The order of the court below is affirmed at the cost of appellant.