## Thomas, Appellant, *v.* First National Bank of Scranton.

Argued November 11, 1953. Before STERN, C. J., STEARNE, JONES BELL, CHIDSEY and ARNOLD, JJ.

*William J. Oliver,* for appellant.

*C. H. Welles, 3rd,* with him *Welles & Mackie,* for appellee.

Opinion by Mr. Justice Allen M. Stearne, January 12, 1954:

The appeal raises the question whether or not a commercial bank is absolved from liability to its depositor because of its payment of a depositor's check after the bank had received notice from the depositor not to pay it. The depositor, in seeking to stop payment of his check, had executed and left with the bank a printed paper (supplied by the bank) titled "Request to Stop Payment of Check". Among the terms of the paper was a provision which constituted a release of the bank from all liability where, in violation of such notice, the bank pays the check through *"inadvertence, accident or oversight"*. Payment of the check was made by the bank under those circumstances. The proceeding is in the nature of a Case Stated as provided by Rule 1007 (3) of the Pennsylvania Rules of Civil Procedure. The court below decided that the bank was liable and entered judgment for plaintiff. On appeal the Superior Court reversed the judgment. An allocatur was allowed.

First National Bank of Scranton, the defendant, is a federal commercial bank in which E. J. Thomas, the plaintiff, is a depositor. The depositor drew a check on his account October 12, 1950 and on October 13, 1950 went to defendant bank to stop payment, whereupon a clerk handed him a printed paper marked "Request to Stop Payment of Check", which he signed and left with the bank. In the paper requesting the bank to stop payment are the words: ". . . Should the check be paid through inadvertence, accident or oversight, it is expressly agreed that the Bank will in no way be held responsible. The Bank receives this request upon the express condition that it shall not be in any way liable for its act should the check be paid by it in the course of its business. The undersigned

agrees to be legally bound hereby." On October 16, 1950, despite the notice, the check was paid by the bank "through inadvertence, accident or oversight" and the amount of the check charged against plaintiff's account. Plaintiff demanded that defendant refund this amount, which defendant refused to do.

At law, a bank has the status of a debtor of the depositor and impliedly agrees to repay the deposit on demand or on order of depositor: 9 C. J. S. Banks and Banking sec. 330; *Prudential Trust Company's Assignment*, 223 Pa. 409, 72 A. 798. Payment by the bank of the check after notice to stop its payment was failure to exercise due care, precaution and vigilance. This constituted negligence, even though the failure to exercise proper care had been due to "inadvertence, accident or oversight". There are many definitions of negligence. Perhaps the one most frequently quoted is that of Judge COOLEY in his work on Torts (3d ed) pp. 1324-25, viz.: ". . . the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury". This Court has cited this definition with approval: *Caulton v. Eyre & Co., Inc.*, 330 Pa. 385, 389, 199 A. 136. It has also been defined in Wharton, Negligence, sec. 3 as follows: "Negligence, in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as immediately produces, in an ordinary and natural sequence, a damage to another".

It is not disputed that at *common law* a bank is liable to the drawer of a check for payment after receipt of a proper nonpayment notice: *The German N. Bank v. The Farmers' D. N. Bank*, 118 Pa. 294, 12 A. 303; *George W. Wall v. Franklin Trust Company of Philadelphia*, 84 Pa. Superior Ct. 392; 9 C. J. S. Banks

and Banking, sec. 353. The problem is therefore presented whether or not an agreement releasing the bank from liability *because of its negligence* is valid.

Here we have the incongruous situation in which a depositor, who has no obligation to sign any agreement of release, and who gives an unrestricted stop-payment order to the bank, is protected *by law* from the bank's negligence, but if he executes an agreement, such as is here involved, he releases the bank from liability for its negligence.

There is, it is true, a difference in various jurisdictions concerning the validity of agreements releasing a bank from negligence. The difference in view is whether or not such agreements are founded upon *consideration.* Judge HIRT in his opinion in the Superior Court discusses this question at length, citing cases. He accurately states, however, that under the Uniform Written Obligations Act of May 13, 1927, P. L. 985, 33 PS 6, lack of consideration is removed as a ground for avoiding the release. But it is to be observed that the present agreement is under seal and even in the absence of the Act consideration would have been imputed. Proof of *failure* of consideration would have been required to void the agreement: *Conrad's Estate,* 333 Pa. 561, 3 A. 2d 697; *Rynier Estate,* 347 Pa. 471, 32 A. 2d 736; *Barnhart v. Barnhart,* 376 Pa. 44, 101 A. 2d 904.

Even though the instrument is otherwise valid, such an agreement, releasing negligence, is void as against public policy. Banks, like common carriers, utility companies, etc., perform an important public service. The United States Government and the Commonwealth respectively stipulate how banks under their respective jurisdictions shall be incorporated and organized. All banks are examined and supervised by government or state officers with extreme particularity. The

United States insures deposits in banks up to a stipulated amount. If a person desires to deposit money in a bank, necessarily, he is relegated to a governmental or state regulated banking institution. The situation of a depositor is quite analogous to that of a passenger on a public carrier who is required to accept such means of transportation and to purchase a ticket in the nature of a contract. This Court has consistently decided that it is against public policy to permit a common carrier to limit its liability for its own negligence: *Coleman v. Pennsylvania Railroad Company*, 242 Pa. 304, 89 A. 87; *Murray v. Philadelphia & Reading Railway Co.*, 249 Pa. 126, 94 A. 558; *Rogers v. Philadelphia & Reading Railway Company*, 260 Pa. 430, 103 A. 873; *Turek v. Pennsylvania Railroad Company*, 361 Pa. 512, 64 A. 2d 779.

Appellee urges that this case is ruled by *Cohen v. State Bank of Philadelphia*, 69 Pa. Superior Ct. 40. In that case plaintiff gave a check to the order of Levin to one Arkin for delivery. Levin, the payee, went to Arkin while Arkin was asleep and extracted the check from his pocket. When Arkin awoke and found the check missing he thought he had lost it and so notified plaintiff. Plaintiff, the maker of the check, directed the bank to stop payment, signed a paper handed to him by the bank, stated that he requested the bank to stop payment "as courtesy only" and released the bank from negligent payment. The court, in holding the agreement valid, stated (p. 42) : "At the time the stop payment order was given to the bank the officers of the institution were told that the check had been lost, that it was intended for Levin and that Arkin had lost it. The bank subsequently paid the check to Levin. *The plaintiff, although he knew that the first check was in Levin's possession, instead of withdrawing the stop payment order took the doubtful course of giving him*

*another check for a larger sum including, however, the amount of the first check, and by reason of both these checks being presented and paid a subsequent check given by the plaintiff was dishonored.* Hence this suit. We see no reason why, under the circumstances in the case, the plaintiff should not be bound by the terms of the stop payment order. We do not say that such an order would protect a bank *under all circumstances.* We think it does in this case. The reason the payment was stopped was because the check was lost. It was to prevent any one but the payee using the lost check, if found, and drawing the money. *When the real payee of the check presented it the bank might infer that the reason for stopping payment had disappeared,* at least the payment of the check after such facts appeared would not render the bank liable in view of the provision of the stop payment notice. The plaintiff was not required to use the form of order but since he chose in writing to ask the bank to stop payment as an act of courtesy and not as a matter of right, he cannot now complain if the bank be relieved from liability by reason of the terms of the order which he gave. We think under the facts as developed in the case the bank cannot be held." (Italics supplied). The facts in that case are *sui generis* and inapposite to those now before us.

We note the suggested distinction between the liability of a commercial bank and a savings bank. It is argued that a savings bank is only liable to its depositors for want of *ordinary care: Bulakowski v. Philadelphia Savings Fund Society,* 270 Pa. 538, 113 A. 553. Cf. *Wronski v. Frankford Trust Company,* 84 Pa. Superior Ct. 511. But the liability of saving fund societies with respect to their rules over identification of depositors and production of pass books is not involved in this case.

While the provisions of the Uniform Commercial Code, of April 6, 1953, P. L. 1, are inapplicable because not effective until July 1, 1954, it is noted that it has been enacted by the Legislature that ". . . *no agreement of the bank can disclaim a bank's responsibility or limit the measure of damages for its own lack of good faith or failure to exercise ordinary care*": Sec. 4-103 (1). Section 4-407 of the Act provides: "If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights

"(a) of any holder in due course on the item against the drawer or maker; and

"(b) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and

"(c) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."

The judgment of the Superior Court is reversed and the judgment below is reinstated.

DISSENTING OPINION BY MR. JUSTICE BELL:

I would affirm on the able opinion of Judge William E. HIRT speaking for a unanimous Superior Court.